GEORGE W. POSEY, Respondent, v. STUTSMAN COUNTY BANK, a corporation, and HARRY S. POSEY, Appellants.

(189 N. W. 315.)

**Auctions and auctioneers — one who was hired to clerk an auction sale held not liable to owner for purchaser's failure to make settlement in accordance with advertised terms.**

1.   Where one was hired at a stated consideration to clerk an auction sale, with the agreement that the bank, of which he was the cashier, would take all paper at 95c on the dollar, and where, at the public auction held, a purchaser bought and received certain property without making settlement in accordance with the terms advertised for the sale, it is *held*, for reasons stated in the opinion, that the clerk was acting under a contract of employment and that the evidence failed to show any breach of duty, whether impliedly assumed or expressly contracted, by such clerk.

Opinion filed June 15, 1922.

Action in District court, Stutsman county, *Nuessle, J.* to recover on a contract.   Defendants have appealed from the judgment.

Reversed.

*A. W. Aylmer* and *A. L. Aylmer,* for appellants.

Notwithstanding the general rule that a verdict on conflicting evidence will not be disturbed it has been held that the reviewing court will nevertheless reverse where the evidence overwhelmingly preponderates against the verdict.   4 Corpus Juris, 861 (21);  Merchants  Bank v. Streeper, 186 N. W. 98 (N. D.)

Nor is it sufficient that the conflict should be in respect of some matter or question which, on all the proof is shown to be immaterial. 4 Corpus Juris, 861 (22) ; 4 Corpus Juris 856 (88).

An entire judgment, jointly binding on several parties if reversed as to one must be reversed as to all.   4 Corpus Juris p. 1182, (36).

The effect of several obligations is that, although they concern the same subject-matter, each obligor is liable only for his several promise, and cannot be held for the other.   13 C. J. 574, (74).

Where parties are bound severally only, their liability is separate and

distinct, and in the absence of statute they cannot be sued jointly. 13.
C. J. 574 (80).

With reference to the construction of an agreement, the intention of
the parties is to be deducted from the language employed by them, and
the terms of the contract where unambiguous, are conclusive, in the ab-
sence of averment and proof of mistake, the question being, not what in-
tention is expressed by the language used. 13 C. J. 524, (29); Harney
v. Wirtz, 152, N. W. 803, (N. D.)

The meaning of the language used by plaintiff and defendants is a.
question of law for the court. 13 C. J. 787 (5).

*Kelly & Morris,* for respondent.

A verdict based upon conflicting evidence cannot be set aside, as un-
supported by the evidence. Montana Eastern R. R. Co. v. Lebeck, 32
N. D. 162, 55 N. W. 648; Northern Trust Co. v. Bruegger, 35 N. D. 150,
159 N. W. 859; Skogness v. Seger, 35 N. D. 366, 160 N. W. 508; Clark
v. Ellingson, 35 N. D. 548, 161 N. W. 199; Senn v. Steffan, 37 N. D.
491, 164 N. W. 102; Blackbody v. Maupin, 38 S. D. 621, 162 N. W.
393; 4 C. J. 864.

When the evidence in a case is conflicting and a motion for a new
trial has been denied the verdict of the jury is conclusive upon appeal.
Peters v. Kirkrakedes, 27 S. D. 371, 131 N. W. 316.

The appellate court will not disturb a verdict which the trial court has.
declined to disturb after a review of the evidence on a motion for a new
trial. Thompson v. Chicago, Milwaukee & St. Paul Railroad Co., 27 S.
D. 567, 132 N. W. 158; Magnuson et al. v. Linwell, et al. 9 N. D. 154,.
157, 82 N. W. 746.

## Statement.

BRONSON, J. The complaint alleges that on March 22, 1920, plain-
tiff entered into a contract with said defendants whereby said defendants
agreed to clerk and take charge of plaintiff's sale; that defendants agreed
to take charge of all settlements made by purchasers at said sale and to
pay to plaintiff the purchase price of such lots, goods, and chattels as.
might be sold at said sale in cash; that defendants agreed not to permit
any property to be removed from plaintiff's farm until full settlement
had been made by the purchasers thereof; that on March 26, 1920, plain-
tiff sold at public auction, pursuant to agreement with the defendants,

certain goods, which were bought by Robert Walks as the highest bidder, for $654.65; that Robert Walks received possession of such property and removed the same from plaintiff's premises with the permission of the defendants; that defendants had not settled for or paid plaintiff for such property; and that there remains due thereon $654.65. The answer of the defendant Posey admits that the plaintiff employed him personally to act as clerk at plaintiff's auction sale and that he agreed to pay him for his services $10. The bank interposed a general denial and a counterclaim upon a note for $100. The plaintiff, in reply, generally denied the counterclaim. The jury returned a verdict of $583.65, with interest, against both defendants, less the amount of the counterclaim with respect to the bank. The defendants have appealed from a judgment entered thereupon, and from an order denying a motion for judgment non obstante, or, in the alternative, for a new trial.

The facts necessary to be stated are as follows:

The plaintiff resided upon a farm near Courtenay, where, on March 26, 1920, he held a public sale. The defendant Harry Posey is his nephew, and was the cashier of the defendant bank. Concerning the arrangement made with the defendants, the plaintiff testified that he saw Harry Posey in the bank; that he told him he would employ him to clerk the sale, if he would do it reasonably; that Harry Posey agreed to clerk the sale for $10, and that the bank would take the paper at 95 cents on the dollar, all of it; that there would be no charge for the cash to be paid at the sale. This was four or six days prior to the sale. The plaintiff proceeded to get out auction bills and to post the same. These bills stated the terms of sale to be:

"All sums of $15 and under, cash; over that amount, time given until October 1, 1920, on approved security. No goods to be removed until settled for. All goods and stock at owner's risk as soon as sold."

The plaintiff employed an auctioneer, and for his services paid him 1 per cent. of the total amount resulting from the sale. At this sale one Robert Walks bought various items of property, amounting to $654.65. Harry Posey clerked the sale. Plaintiff paid him $10 for his services. There is evidence in the record to the effect that, prior to the sale, Harry Posey advised Robert Walks that whatever he purchased at such sale must be settled with cash; that Walks advised him about a land deal in which he was then concerned, whereby he would secure some money in a few days, or possibly two weeks; that Harry Posey told him this was all right. However, Harry Posey maintains in his testimony that he

continuously advised Mr. Walks that he would have to pay cash, and also so notified the plaintiff. At the time of the sale Walks intended to move upon plaintiff's farm. Later, within a short time, he did move upon such farm. After the sale, no settlement was made by Walks with Harry Posey or the plaintiff. No settlement has ever been made, either in cash or upon approved security. Harry Posey's testimony is to the effect that he demanded settlement in cash, and advised plaintiff not to permit removal of property until settlement was made. Plaintiff's testimony is to the effect that he had nothing to do with the settlement. He received no advice from defendant Posey that settlement must be made in cash; that he expected all property sold at such sale to be paid either through cash received at the sale or by the defendant bank, whose business it was to see that approved security was given or to refuse permission to a person to bid if the condition were otherwise. After the sale Walks made an exchange of two horses, which he bought at the sale, for some other property of the plaintiff, pursuant to an agreement between them. The testimony is that this was satisfactory to the defendants. All of the property, excepting two horses or two colts, so bought by Walks, remained upon the premises, although it appears that Walks assumed to and did take charge of such property. It appears that some negotiations were thereafter had for purposes of making settlement with Walks but no settlement occurred. It appears, further, in the testimony, that the plaintiff, during the sale, was engaged in looking after the providing of a lunch, and with details concerning the presentation of the property for sale. It appears, also in the evidence, that at this sale the plaintiff had a by-bidder to bid on some horses, which he desired to keep and retain, up to a certain figure; that upon two sales the purchasers credited their respective accounts owing by the plaintiff; that one purchaser paid the plaintiff direct. This lawsuit has resulted through the failure of Walks to make settlement for the goods purchased at this auction sale.

## Decision.

The complaint, if it alleges any cause of action, sets up a contract of employment involving principles of agency and violation of such contract of employment through failure to perform contract duties assumed. As such, it must be construed to allege an action to recover damages for violation of instructions and breach of duty. See 2 C. J. 886, 909. In this regard the gist of plaintiff's cause is the alleged agreement by the

defendants to take charge of all settlements, and not to permit any property to be removed from plaintiff's farm until full settlement therefor had been made..

Although it is alleged in the complaint, the evidence fails to disclose any specific agreement whereby defendants agreed not to permit any property to be removed from plaintiff's farm until full settlement therefor had been made. In accordance with plaintiff's testimony, he employed the defendant Posey to clerk his auction sale, with an understanding that the bank, of which Harry Posey was cashier, would take all of the paper at 95 cents on the dollar. Otherwise, he testified that Harry Posey was to pass upon the paper that should be accepted by the bank. It is true that he otherwise testified that it was the business of Harry Posey to see that no one bid at the sale, unless he would pay cash, or unless his paper would be acceptable to the defendants; that, if one were permitted to bid, the acceptance of such bid would constitute a sale. As the evidence discloses, however, such statement of the plaintiff was his mere conclusion upon the agreement that he had made with Harry Posey and concerning the duties imposed as clerk of the sale. Upon the record the defendant Harry Posey, whether representing himself alone or as the agent of the bank, as an employee of the plaintiff, as his agent, in clerking the sale. As such employee he was not an insurer. He was merely bound to exercise reasonable care, skill, and judgment. 21 R. C. L. 825; 18 R. C. L. 502, 503.

The sale was conducted by the plaintiff, not the defendants. The auctioneer was employed by the plaintiff. The terms of the sale were specified by the plaintiff. The evidence does not show that the defendants, or either of them, pursuant to the agreement made, or otherwise, guaranteed the payment of cash or the tender of approved security by any of those who might bid at the sale. The defendant Harry Posey acted as a mere clerk of the sale, with the additional duty and right to pass upon security that might be tendered by bidders who desired to buy. It is apparent that the plaintiff in certain cases dealt individually with bidders. He had a by-bidder present for the purpose of bidding at the sale. In one case he settled direct with the purchaser. Some debts owing by the plaintiff were offset against purchases made by the bidders. The evidence fails to disclose that Walks, after the sale, tendered any approved security. After the sale he proceeded to trade some other property for two horses bought by him at the sale. Consent to such proceedings, if given by the clerk of the sale, was consent as plaintiff's

agent, not as an independent contractor. There is a failure of proof to show any agreement not to permit delivery of the property to bidders, and to show any breach of duty, whether impliedly assumed or expressly contracted, by the defendant Harry Posey in making settlement concerning the Walks purchases.

The judgment is reversed, plaintiff's action dismissed, and judgment ordered to be entered in favor of the defendant bank for its counterclaim, with costs.

CHRISTIANSON and ROBINSON, JJ., concur.

GRACE, J., concurs in the result.

BIRDZELL, C. J., dissents.

ROBINSON, J. (concurring specially). This action has no legal basis on which to rest. The complaint does not state a cause of action. It avers that in March, 1920, the plaintiff employed defendants to clerk and take charge of an auction sale to be held on plaintiff's farm, some twelve miles from Courtenay, N. D. on March 26, 1920; that defendants agreed to take charge of all settlements made by purchasers, to pay plaintiff the price of goods sold for cash, and not to permit any property to be removed from the farm without full settlement; that at the sale plaintiff put up a lot of goods and chattels which were sold to the highest bidder for $654.65; that the bidder was Robert Walks; that he received possession of said property and removed the same, with the permission of defendants, and did not settle or pay for it.

Now those facts do not constitute a cause of action. There is no showing that defendants, or anyone, converted or damaged the property or did anything to impair the plaintiffs title. There is no averment concerning the value of the property or any damage resulting from the removal. There is no averment that either defendant agreed to pay for the property or that either did any injury to the plaintiff. Turning from the complaint to the evidence, we have this showing: The plaintiff was about to have an auction sale at his farm near Courtenay, where the bank is located. He agreed with Harry Posey to clerk the sale and it was agreed that the bank should accept at 95 cents on the dollar such notes

as Harry Posey should approve. The plaintiff was present at the sale and was assisted by his son and a grandson. He hired his auctioneer, set up a lunch, and had general supervision of his property. It is true that at the sale Walks bid on a lot of property for which he did not give a note, pay cash, or make any settlement, but did not thereby obtain any title to the property. It is still the property of the plaintiff, unless by his own acts or laches his title has been lost. For several days after the auction sale the property remained on the plaintiff's farm and it was not removed without his acquiescence or consent. There was no deception. He knew well that Walks never settled for the property or paid anything on it. He knew that the bank had expressly refused to accept any note of Walks. If the plaintiff permitted Walks to take the property, it was his own affair. He had no right to expect and did not expect either defendant to remain on the place and to guard the property after the sale. There is no averment or claim that the property was sold to Walks on credit or for cash, or that by removing or taking possession of the property he acquired any title. There was no sale to him.