George GANSER, Frank Ganser, Katherine Reardon, Rose Bonifas, and Dorothy Van Hoogen, Plaintiffs and Appellants,

v.

Vergie ZIMMERMAN, Defendant and Cross-Appellant,

and

George I. Anderson, Administrator of the Estate of Tillie Ganser, deceased, and A. William Aylmer, Defendants and Respondents.

No. 7570.

Supreme Court of North Dakota.

Dec. 31, 1956.

Rehearing Denied Feb. 18, 1957.

J. K. Murray, Bismarck, for plaintiffs and appellants.

Hjellum, Weiss, Nerison & Ottmar, Jamestown, for defendant and cross-appellant Vergie Zimmerman.

MORRIS, Judge.

The plaintiffs who are five of the six children of Tillie Ganser, deceased, instituted this action to quiet title to specific quarter sections of land in individual plaintiffs. The complaint consists of two causes of action. The first is in statutory form to quiet title. In it Katherine Reardon claims ownership of the NE ¼ of Section 14, Township 140N, Range 67W; Rose Bonifas claims the SE¼ of Section 31, Township 141N, Range 66W; and Dorothy Van Hoogen claims the NW ¼ of Section 14, Township 140N, Range 67W. Neither George Ganser nor Frank Ganser claims any ownership of land in the first cause of action. The first cause of action also states that Tillie Ganser died October 10, 1951, intestate, and that the defendant George I. Anderson is the duly appointed administrator of her estate.

In the second cause of action it is alleged that on July 30, 1946, Tillie Ganser entered into a contract in writing with Rose Bonifas, George Ganser, Katherine Reardon, Dorothy Van Hoogen, and the defendant Vergie Zimmerman whereby Tillie was to convey the above described land to the respective claimants in the first cause of action and was to convey to George Ganser the NW¼ of Section 12, Township 140N, Range 67W.

It is also alleged that as a part of and appendix to the written contract it was orally agreed between all the parties that A. William Aylmer was created an escrowee to act in connection with the consummation of conveyances and transfers that were to be made pursuant to the written contract and that Aylmer

became a party to the oral escrow agreement.

In the second cause of action it is further alleged that between the date of the contract and the death of Tillie Ganser the plaintiff Katherine Reardon furnished care, maintenance, and support for Tillie Ganser for which she has not received compensation and it is alleged that there is due her thirty dollars a month for all of the period of care amounting to $1,875 and that according to the provisions of the agreement Katherine Reardon has a lien on all of the real estate designated in the contract as security for her compensation.

It is also alleged that Dorothy Van Hoogen, Katherine Reardon, and Rose Bonifas have separately fully performed the conditions on their part required by the written agreement and if any part thereof remains unperformed they stand ready, able, and willing to complete the performance of the agreement on their part. The plaintiffs pray that title be quieted in them to the respective tracts of land which they claim, and Katherine Reardon especially prays that the amount due her for care, maintenance, and support of Tillie Ganser be adjudged a lien on all tracts of land described in the contract including the land of Vergie Zimmerman described as the NW¼ of Section 22, Township 140N, Range 67W. It should be noted that this tract was never the property of Tillie Ganser but was included in the agreement as security for the performance on the part of Vergie Zimmerman of promises of support made by her, as will more clearly appear when we discuss the agreement in detail.

The answer of the defendant Aylmer is of some length. Its gist is that he prepared the various instruments involved in this litigation. They were to be held by him until the performance of certain conditions and upon compliance with those conditions he was to deliver the instruments to the various parties who were entitled thereto. The conditions were not fully complied with. He retained the instruments in his possession and

"at the trial of this action will present said Deeds and Mortgages and Notes to this Court, together with the original agreement above referred to, for the Court to make such disposition of the same as this Court shall decide upon the completion of the trial of this action."

The answer of the defendant Vergie Zimmerman admits the death of Tillie Ganser and the appointment of George I. Anderson as her administrator. She denies generally the other allegations of the complaint with the exception that Katherine Reardon is entitled to compensation for the care of the decedent for a period subsequent to July 30, 1946, at thirty dollars per month less her obligated payment of ten dollars per month. She further alleges:

"that under date of July 30th, 1946, an Agreement was made between Tillie Ganser and the Plaintiffs, Rose Bonifas, George Ganser, Katherine Reardon, Dorothy Van Hoogan and Defendant, Vergie Zimmerman; that said Agreement is attached hereto and marked Exhibit A and by reference thereto made a part hereof.

"(b) This Defendant alleges that under date of July 30th, 1946, an Agreement was made between Tillie Ganser and Plaintiff Frank Ganser and Elsie Ganser, wife of Frank Ganser; that said Agreement is attached hereto and marked Exhibit 'B' and by reference thereto made a part hereof.

"(c) That the Agreement marked Exhibit 'A' as originally prepared provided that Plaintiff Dorothy Van Hoogan, instead of receiving a quarter section of land, was in lieu thereof to receive $2,000 in cash; that after said Agreement was prepared there were

different interviews by the various parties involved with Defendant A. William Aylmer, who was doing the legal work in connection therewith and they agreed that in view of the fact that Plaintiff Dorothy Van Hoogan was about to go to Germany with her husband—who was in military service—and the further fact that there was not sufficient cash on hand at that time to pay her the $2000, and the further fact that she had no security to give as security for the payment by her of the $10 per month to her mother as provided in said Agreement, that one of the other children let Dorothy Van Hoogan have a quarter section and as an accommodation and favor, the Defendant Vergie Zimmerman, thereupon agreed to do this—said Defendant Vergie Zimmerman to receive the $2000 in cash in place of the quarter section that she was to let Dorothy Van Hoogan have; that said Agreement was thereupon changed to provide that the quarter section which was to go to Vergie Zimmerman and described as the Northwest Quarter of 14–140–67 was instead to go to Dorothy Van Hoogan, one of the above named Plaintiffs, subject to a lien thereon in favor of the mother as security for the payment of $10 per month for her support, and in accordance with said agreement, the name of Dorothy Van Hoogan was substituted for the name of Vergie Zimmerman with reference to the Northwest Quarter of 14–140–67.

"(d)    That the conditions provided in Exhibits 'A' and 'B' aforesaid were not fulfilled nor carried out, nor were the conditions provided by said Tillie Ganser fulfilled and carried out thus entitling the delivery of the deeds held by Defendant, A. William Aylmer."

Exhibits A and B of the answer are Exhibits 1 and 2 of this record.

She also alleges that the plaintiffs should be made to account to the administrator for the rents and profits of the various tracts of land described in her answer and which have been in possession of the plaintiffs since the year 1947 and prays that the court require the plaintiffs to make such an accounting.

The administrator filed no pleading although at the beginning of the trial the record shows that the attorneys for Vergie Zimmerman also appeared for the administrator. He did not participate in the trial, no statement of his position with respect to any of the issues was made by him or on his behalf.

The trial court calculated the financial situation as between Tillie Ganser and her children and between the children with respect to the amounts which they had paid and the value of services they had rendered in connection with the care, maintenance, and support of their mother. Some he found to have overpaid, while others had failed to meet their obligations. His determination as to Vergie Zimmerman was as follows:

| "Due to Virgie Zimmerman | | $2,000.00 |
| "Paid by her on maintenance | $150.00 | |
| "Due from her | $580 00– | |
| "Credit on amount due her | $430.00 | 430.00 |
| "Balance due Virgie Zimmerman | | $1,570.00." |

The court ordered certain payments to be made to A. William Aylmer, directed how the fund resulting from these payments should be disbursed, and decreed that on compliance with the judgment title be quieted in the plaintiffs to their respective pieces of land as shown by the deeds and adjudged by the court. The plaintiffs appealed to this court and demanded a trial de novo. The defendant Vergie Zimmerman cross-appealed.

The agreement referred to in the complaint is in evidence as Exhibit 1. It is dated July 30, 1946. Tillie Ganser is the party of the first part and Rose Bonifas, George Ganser, Vergie Zimmerman, Katherine Reardon, and Dorothy Van Hoogen are parties of the second part. It recites that

the first party "is deeding" certain real estate therein described and is having her bank account put in joint ownership in favor of the second parties and the first party with the right of survivorship. The authority to sign checks was vested in the first party with the provision that any two of the parties of the second part should also sign before the checks could be cashed "and $2,000 in cash is to be turned over to Virge Zimmerman instead of any interest in real estate of first party."

Paragraph 2 of the agreement states that the purpose of the transfers 'is to give the parties receiving deeds

"full title and control of the real estate so deeded to them so that they can each go ahead and manage and look after the farming of said farm lands, subject to agreements on their part to pay to first party during her lifetime the sum of Ten Dollars ($10.00) each month from each of second parties hereto, or a total of $50.00 per month, said payments of $10.00 to commence January 1st, 1947, * * *."

Then follow some unimportant provisions concerning the use of the bank account.

Paragraph 3 of the agreement contains provisions for the care and maintenance of Tillie Ganser during her lifetime and states that any of the second parties who keep her in their home and provide for her care and maintenance shall receive thirty dollars per month. Then comes this important provision:

"The real estate aforesaid to stand as security for the payment of such obligations upon the recording of this agreement, this agreement, however, not to be recorded except in case second parties or either of them do not carry out their part of this agreement.

"It is understood and agreed, however, that each of second parties herein does hereby give his promissory note to pay first party $10.00 each month during her lifetime, commencing January 1st, 1947, the same, with the exception of the note from Virge Zimmerman, to be secured by a mortgage on the real estate so received by second parties as hereinafter set forth, to-wit:—

"A deed to Dorothy Van Hoogen of the NW¼ of 14–140–67

"A deed to Katherine Reardon of the NE¼ of 14–140–67

"A deed to Rose Bonifas of the SE¼ of 31–141–66

"A deed to George Ganser of the NW¼ of 12–140–67, which is to be subject to the Federal Land Bank mortgage, which mortgage George Ganser assumes and agrees to pay; and in addition to the payment of the Federal Land Bank mortgage balance aforesaid, said George Ganser is to give to Tillie Ganser his promissory note agreeing to pay said $10.00 each month during the lifetime of Tillie Ganser, and in addition thereto to pay Tillie Ganser $1800.00 with interest thereon at 5% per annum from January 1st, 1947 if not paid before, represented by said promissory note, said $1800.00 to be payable in the following manner, to-wit:—On or before January 1st, 1947. And Vergie Zimmerman to give security on a Mtg on NW¼–22–140–67 Stutsman Co. ND

"The $10.00 payments to be paid to Virge Zimmerman for her mother's use, Virge Zimmerman to keep account of said payments and issue receipts to the ones making such payments.

"Said $1800.00 representing the balance due first party herein for the sale by first party to George Ganser of all the livestock, farm machinery, equipment and personal property on the land above described being hereby conveyed to George Ganser, except the personal belongings of the first party.

834

"$2,000.00 cash to be delivered to Virge Zimmerman, for which she gives her note agreeing to pay to first party $10.00 each month during the lifetime of first party."

All of the parties mentioned in this agreement signed it. Signatures were acknowledged before A. William Aylmer on the following dates: Tillie Ganser and Vergie Zimmerman, December 19, 1946; Katherine Reardon, January 4, 1947; Dorothy Van Hoogen, January 2, 1947; and George Ganser, April 1, 1947. Rose Bonifas acknowledged the agreement before a notary in Cook County, Illinois, on February 13, 1947.

Tillie Ganser executed quitclaim deeds to her daughters Katherine, Rose, and Dorothy, dated July 30, 1946, and acknowledged before A. William Aylmer, December 19, 1946. These daughters signed promissory notes dated July 30, 1946, agreeing to pay to Tillie Ganser during her lifetime from January 1, 1947, to the time of her death the sum of ten dollars each month.

The quitclaim deeds contained a statement that they were subject to a purchase money mortgage from the grantee to Tillie Ganser dated July 30, 1946. Each of these three daughters executed a mortgage to Tillie Ganser dated July 30, 1946, covering their respective quarter sections as conveyed by the deeds and containing this provision:

"it being understood and agreed between the parties hereto that second party is transferring the above described land to first party and in consideration thereof first party is executing and delivering to second party herein her promissory note the payment thereof being secured by this mortgage, the amount of said indebtedness according to the terms of said note being as follows:—That 1st party herein agrees to pay to second party during her lifetime the sum of Ten Dollars ($10.00) per month, said

monthly payments to commence January 1st, 1947."

The mortgage signed by Dorothy was acknowledged before A. William Aylmer January 2, 1947. The one executed by Rose was acknowledged February 13, 1947, and the one executed by Katherine was acknowledged January 4, 1947.

George Ganser executed a note dated July 30, 1946, agreeing to pay Tillie Ganser $1,800 on or before January 1, 1947, and containing this further provision:

"In addition to said $1800.00 indebtedness the undersigned does further agree for and during the lifetime of Tillie Ganser, from January 1st, 1947 to the time of her death, to pay to her the sum of Ten Dollars ($10.00) each month commencing January 1st, 1947."

It does not appear that George Ganser ever executed a mortgage to secure this note. The evidence shows by an endorsement thereon above the signature of Tillie Ganser that the major indebtedness was paid and that the note was canceled except as to the obligation to pay her ten dollars a month. Mr. A. William Aylmer testifies that Tillie Ganser had made out a deed to her son George covering a quarter section of land which she left with Mr. Aylmer. This deed was returned to her at her request on November 9, 1946, and was by her delivered to George. The evidence also shows that George fulfilled his obligation to make the ten dollar payments for his mother's support and in fact overpaid the amount for which he had obligated himself. It should be noted that the deed was delivered to George before the date of the acknowledgments on Exhibit 1 or any of the other instruments described therein, an indication that the other signers had no objection to that delivery.

Vergie Zimmerman and her husband executed a note to Tillie Ganser dated July 30, 1946, providing for the same payments of ten dollars per month that were provided

in the notes of the other daughters. It is secured by a mortgage covering the NW¼ of Section 22, Township 140, Range 67 in Stutsman County and contains this statement:

"it being understood and agreed between the parties hereto that second party is delivering to first parties the sum of $2,000.00 in cash, and in consideration thereof first parties are executing and delivering to second party herein their promissory note, the payment thereof being secured by this mortgage, the amount of said indebtedness according to the terms of said note being as follows:—That first parties herein agree to pay to second party during her lifetime the sum of Ten Dollars ($10.00) per month, said monthly payments to commence January 1st, 1947, this mortgage to be released and said note cancelled on death of second party, providing said monthly payments have been made to date of death of second party."

This mortgage is dated and acknowleged April 1, 1947. All of the mortgages given to secure the ten dollar payments for the support of Tillie Ganser specify that they are without interest.

The position of the respondent and cross-appellant Vergie Zimmerman is stated in the closing paragraph of her brief as follows:

"The Judgment of the lower Court should be reversed and remanded with instructions that all of the real property involved be adjudged to belong in fee simple to the Estate of Tillie Ganser, deceased; that the Plaintiffs be required to render an accounting in connection with the lands of which they have had possession since the execution of the contracts; that all of the deeds to said lands be cancelled, together with all of the notes and mortgages executed and escrowed under the contracts; that the lands involved in this lawsuit, together with the rents and profits accounted for from said lands, be probated in the Estate of Tillie Ganser according to the statutes of descent and distribution of the State of North Dakota."

At the time of the death of Tillie Ganser, A. William Aylmer held in his possession the original Exhibit 1, copies of which had been furnished to the signatories. He also held possession of all of the instruments pertaining to the title of the real estate herein involved described in Exhibit 1, except the deed to George Ganser which Tillie had obtained from Aylmer and delivered to George on November 9, 1946. After that delivery the parties to Exhibit 1 continued to treat it as being in full force and effect. Payments were made for the support of Tillie Ganser and she was provided for and maintained among these children until her death, although at that time some of the signers of Exhibit 1 were considerably in default on their ten dollar payments.

■ Exhibit 1 contains no provisions for an escrow. However, a valid escrow may be made by oral agreement and its existence may in part at least be shown by circumstances indicating the intention of the parties. 19 Am.Jur., Escrow, Section 6; 30 C.J.S., Escrows, § 4 c.

■ A. William Aylmer throughout his testimony describes his possession of the deeds, notes, and mortgages as an escrow. It was so treated at the trial and is so designated by counsel for all parties in their briefs on this appeal. The evidence shows that these instruments were put into the possession of Aylmer by Tillie Ganser, the grantor in the deeds, and by the various signers of the notes and mortgages to be held by him until the performance of certain conditions, whereupon they were to be delivered. The grantees in the deeds went into possession of the respective lands at the time the arrangement was made or shortly thereafter and have remained in

possession since. None of the parties attempted to rescind the escrow and demand a return of the instruments executed to them that had been deposited with Aylmer. It does not appear that Vergie Zimmerman ever demanded a return of her note and mortgage but on the other hand insisted upon the payment to her of two thousand dollars provided for in Exhibit 1 and which she insisted was a condition to the delivery by Aylmer of the deeds conveying land to the others that had been deposited with him. It also appears that other signers of Exhibit 1 demanded their deeds but Aylmer refused to deliver them because the two thousand dollars had not been paid to Vergie Zimmerman. We reach the conclusion that the deeds, notes, and mortgages described in Exhibit 1 were placed in escrow with Aylmer to be delivered or released upon the performance of conditions. We must next determine what those conditions were and what is the present status of their performance.

"A grant may be deposited by the grantor with a third person to be delivered on the performance of a condition, and on delivery by the depositary it will take effect. While in the possession of the third person and subject to condition, it is called an escrow." Section 47–0908, NDRC 1943.

However the term "escrow" is not limited in its application to deeds but may apply to the deposit of other written instruments with third parties upon condition similar to that prevailing in the escrow of deeds. 19 Am.Jur., Escrow, Section 3; 30 C.J.S. Escrows, § 3.

A fair construction of Exhibit 1 in the light of the circumstances and the conduct of the parties indicates that when Tillie Ganser executed deeds in favor of the other signers she intended that those deeds would not be delivered until two conditions had been met. The first condition was that the other signers of this agreement, with the exception of Vergie, would execute mortgages securing the payment to Tillie of ten dollars per month during her life. The mortgages were to cover the lands which Tillie was deeding to her children.

The second condition was that Vergie Zimmerman who was receiving no land should receive two thousand dollars cash and Vergie was to furnish a mortgage securing the ten dollar payments on land which she or her husband already owned. It was to carry out this intention that the escrow arrangement was devised. We reach the conclusion that the deeds were turned over to Aylmer in escrow upon condition that the mortgages be executed by all of the daughters as provided in the agreement and that Vergie Zimmerman should receive two thousand dollars cash and that when both conditions had been performed Aylmer would deliver the deeds to the grantees and the mortgages to the mortgagee. Over a period of some time the notes and mortgages were acknowledged and left with Aylmer, the last being the note and mortgage of Vergie Zimmerman dated April 1, 1947. It was the understanding of Aylmer that he was not only to receive these mortgages but that Vergie was to be paid two thousand dollars before he delivered the deeds. He was asked: "If she had gotten the $2,000 you would have delivered the deeds, wouldn't you, to the respective parties?" To which he replied: "Yes. And I would have secured the mortgages as to the payment for the ten-dollar-a-month payments." It is clear that this condition has not been complied with and as the matter stands at this point the grantees are not entitled to receive their deeds.

Vergie Zimmerman now contends that there was another condition to the delivery of the deeds which was the payment of ten dollars a month for the support and maintenance of Tillie during her lifetime; that the plaintiffs completely breached this agreement and that having failed to perform it during Tillie's lifetime they failed to meet the conditions under which the deeds were executed; that the escrow agreement no longer exists; and that the deeds are void and should be canceled.

We do not agree with the contention that delivery of the deeds was conditioned upon the payment by the grantees of ten dollars per month during Tillie's lifetime. There is nothing about this transaction to indicate that Tillie intended that these deeds were not to be delivered until after her death. In fact circumstances strongly point to the opposite. They indicate that Tillie intended that title and possession would both be vested in the grantees without reference to the time of her death and that in order to secure her support it was agreed that the grantees should give notes and mortgages on the land that she was deeding away, thus protecting her against possible improvidence or misfortune on the part of the grantees and that upon payment of two thousand dollars to Vergie both the deeds and the mortgages securing her support would be delivered to the parties entitled thereto. It further appears that as far as this action is concerned it does not involve the estate of Tillie Ganser or the assets of the estate other than the deeds, notes, and mortgages held in escrow and the land described therein. That conclusion is supported by the fact that the administrator of the estate has filed no pleadings and asserted no claim against the parties or to the property involved in this action.

Some of the signers of agreement Exhibit 1 have not paid all that they were obligated to pay under the agreement. One of the signers, Katherine Reardon, claims substantial compensation for the care of her mother. Unpaid claims against the children for their failure to meet their agreed obligations for support are assets of the estate and should be collected by the administrator. The claim of Katherine Reardon, on the other hand, may be a liability of the estate for which she should file her claim in county court. Neither are matters to be considered in this action.

Reverting to a consideration of the escrow, it is emphasized that Tillie Ganser is now dead and that some seven years elapsed between the creation of the escrow and the bringing of this action. It is the general rule that the death of a grantor while his deed is held in escrow does not invalidate the instrument and it may be subsequently delivered upon compliance by the grantee with the conditions of the escrow agreement or upon the happening of the contingency upon which valid delivery depends. Arnegaard v. Arnegaard, 7 N.D. 475, 75 N.W. 797, 41 L.R.A. 258; 19 Am. Jur., Escrow, Section 27.

It is also generally held that time is not of the essence of an escrow agreement unless so specified and if no time is specified performance should be had within a reasonable time. In this case time is clearly not of the essence. The time that has elapsed is considerable but whether or not the mere lapse of time gives one of the interested parties the right to declare the escrow to be rescinded depends upon the circumstances and the conduct of the parties. 30 C.J.S., Escrows, § 10 b.

The transaction under consideration is not a simple escrow like the deposit of a deed to be delivered upon payment of the purchase price. This escrow consists of the deposit of deeds by Tillie Ganser, the grantor, and the deposit of notes and mortgages by four mortgagors in compliance with one of the conditions upon which the deeds were deposited, a further condition being the payment to Vergie. Neither Tillie Ganser nor the administrator of her estate raised any objection to the continuance of the escrow and to them the lapse of time has apparently not been found objectionable to the point of causing an attempt to repudiate, cancel, or revoke the escrow. The only objector is Vergie Zimmerman. She demanded her money and admonished Mr. Aylmer not to deliver the deeds until she was paid two thousand dollars. These acts were in ratification of and in reliance upon the escrow, not a repudiation of it. She had deposited her note and mortgage as compliance on her part. She never demanded the return of these instruments nor

in any manner sought to revoke or rescind the escrow until after this action was brought when she served and filed her answer and counterclaim. Under these circumstances equity will not permit her to declare that rescission of the escrow is an accomplished fact due to the lapse of time. By her conduct and by her inaction she has waived the right to assume that position which is obviously inequitable and contrary to the intention of Tillie Ganser the grantor and depositor of the deeds. See 17 C.J.S., Contracts, § 358; Bu-Vi-Bar Petroleum Corporation v. Krow, 10 Cir., 40 F.2d 488, 69 A.L.R. 1295.

There is no evidence that Vergie Zimmerman demanded payment of the two thousand dollars from Tillie Ganser, the administrator of her estate, or from any of the other signers of the agreement Exhibit 1. Vergie's demand was upon the escrowee not to deliver the deeds until she was paid. In Gammon v. Bunnell, 22 Utah 421, 64 P. 958, 959, in considering the terms of the escrow of a deed the court said:

"If no date is fixed for the delivery or performance of the contract, a reasonable time is intended, and no default can attach until after a demand and failure or refusal to perform. 2 Warv. Vend. p. 774."

The trial court found that Vergie Zimmerman owes four hundred thirty dollars on her obligation for the support and maintenance of Tillie Ganser. Upon this sum she is not obligated to pay interest. When on April 1, 1947, she delivered to Mr. Aylmer the note and mortgage executed by her and her husband she fulfilled her obligation under the escrow agreement and complied with the condition which entitled her to receive two thousand dollars. Her sisters had already delivered to Mr. Aylmer their notes and mortgages and had become entitled to possession of their respective tracts of land. Vergie has had neither money nor land. She therefore is entitled to two thousand dollars with interest there-

on at the legal rate of four per cent from April 1, 1947. Since she owes four hundred thirty dollars on her obligation for her mother's maintenance, which debt is an asset of the estate of Tillie Ganser, that amount must be deducted from the amount that Vergie is entitled to receive as performance of the final escrow condition. The deeds cannot be delivered until there has been paid to Vergie Zimmerman two thousand dollars with interest thereon at four per cent from April 1, 1947, less the sum of four hundred thirty dollars.

By her answer and counterclaim in this action Vergie Zimmerman seeks to have the escrow terminated and the deeds declared void. If that result is reached the land which the deeds purport to convey will become an asset of the estate of which six children of Tillie Ganser are the heirs. The record does not show that the estate now has any assets other than claims against some of the children for unpaid shares of their mother's maintenance. It seems probable that the estate does not have funds from which can be paid the amount to which Vergie Zimmerman is entitled under the escrow agreement. However, it is immaterial where the money comes from as long as Vergie gets it. The present situation cannot continue forever. We have reached the conclusion that the escrow still exists; that Vergie is not entitled to a decree declaring that it has been rescinded and the deeds are void. She is however entitled to a termination of the escrow within a reasonable time if there is not paid to her the amount due as above computed. This time we fix at ninety days. The agreement Exhibit 1 and the instruments described therein which are held in escrow will remain in the custody of the district court until entry of final judgment. If within ninety days of the receipt of remittitur by the district court proof satisfactory to that court be made that the sum due Vergie Zimmerman as herein provided has been paid to her or a tender thereof has been made by deposit and notice as provided by law, the court shall direct the delivery of the deeds

to the respective grantees therein and delivery of the notes, mortgages, and the original agreement Exhibit 1 to the administrator of the estate of Tillie Ganser whereupon judgment will be entered quieting title in the respective grantees subject to the mortgages. In event payment or tender has not been made as herein provided within the specified ninety days Vergie Zimmerman shall have judgment declaring the deeds and mortgages void and the land described in the deeds to Rose Bonifas, Katherine Reardon, and Dorothy Van Hoogen is an asset of the estate of Tillie Ganser.

There was introduced in evidence another agreement Exhibit 2 dated July 30, 1946, and executed by Tillie Ganser as party of the first part and Frank Ganser and Elsie Ganser, his wife, parties of the second part. The other children of Tillie Ganser were not parties to this agreement. The only similarity between this agreement and the agreement Exhibit 1 is that it provides for the payment by Frank Ganser to Tillie Ganser of the sum of ten dollars each month from January 1, 1947, for her support and maintenance during her lifetime. Tillie agrees to execute a deed to Frank Ganser and Elsie Ganser, his wife, to the SW¼ of Section 24–140–67 "to be delivered to Frank Ganser upon the death of Tillie Ganser, * * *." The grantees were not required to give a note and mortgage to secure the payment of ten dollars per month as was provided by the other agreement. It is provided however that the payments of ten dollars per month shall be a lien on the SW¼ of Section 24.

It also appears by Exhibit 2 that a deed had been executed by a grantor not a party to the agreements conveying to Elsie Ganser the NW¼ of Section 25, Township 140, Range 67, which is unrecorded and the agreement Exhibit 2 provides

"the undersigned Elsie Ganser, in consideration of Tillie Ganser making to Frank Ganser the agreements herein contained to be by her kept and performed, does hereby agree that said deed to the NW¼ of 25 aforesaid shall stand as security and said land shall stand as security for the performance by Frank Ganser of his obligations herein set forth."

Both deeds, the one from Tillie to Frank and Elsie Ganser covering the SW¼ of Section 24 and the deed running to Elsie Ganser covering the NW¼ of Section 25, were turned over to A. William Aylmer and have remained in his possession until produced in court at the trial of this action. The plaintiffs' complaint does not mention the agreement Exhibit 2 nor the instruments or land described therein.

The defendant Aylmer states in his answer:

"This Defendant alleges that the Plaintiff Frank Ganser was not a party to the agreement herein described, (Exhibit 1) but that he was a party to a separate agreement between himself and his mother, Tillie Ganser, but it appears to this Defendant that these Plaintiffs, including said Frank Ganser, are not bringing this agreement into this case.

"However, these Plaintiffs and this Defendant Vergie Zimmerman are heirs of their mother, Tillie Ganser, and are interested in this agreement with Frank Ganser, it being an asset of the estate of Tillie Ganser, deceased, and this Defendant does hereby give notice to the parties to this Action, including the alleged Administrator of the estate of Tillie Ganser, that this agreement with Frank Ganser, and the Deeds referred to therein, are in the possession of this Defendant, and that this Administrator should obtain a proper Order from the Court requesting that this Defendant turn over said instruments to this Administrator, as this Defendant does not wish anything more to do with them, and it being the duty of said Administrator to conserve the assets of said estate."

There are no issues in this case arising under any of the provisions of the agreement Exhibit 2. Elsie Ganser is a party to that agreement, a grantee in one of the deeds described therein, and a cograntee in the other. She is not a party to this action, nor has she in any manner appeared before the court. No decision can be made in this action regarding Exhibit 2, the instruments, or the property described therein. These instruments must be returned to Mr. Aylmer by whom they were produced in court.

The judgment appealed from is vacated and the case remanded for proceedings conformable to this decision.

BURKE, C. J., and SATHRE and JOHNSON, JJ., concur.

GRIMSON, Judge (concurring).

I concur in the foregoing opinion. To my mind there is a further reason why the plaintiffs should pay the $2,000 and interest to Vergie Zimmerman. The plaintiffs and Vergie, with their mother, Tillie Ganser, signed an agreement dividing the mother's property in consideration of the children supporting her while she lived. This was a joint contract. Sec. 9–0104 NDRC 1943, under which all are bound jointly to the full extent of the promise. 17 C.J.S., Contracts, § 353 b, p. 808; Houston v. Bain, 170 Va. 378, 196 S.E. 657, 663.

In this division of property five of the parties named each received a quarter section of land. Vergie Zimmerman was, in lieu of land to receive $2,000 cash. The evidence shows that in addition to the lands involved there was more than $2,000 worth of personal property belonging to the mother, namely, $1,800 coming from George Ganser for the purchase of her personal property and at least $350 coming from Frank to her on the prior sale of her land to Frank. Out of that personal property $2,000 should have been paid to Vergie. Instead of that, $1,737.10 of the $1,800 due from George was deposited in the mother's bank account and used for her medical and funeral expenses. Exhibit 1 provided that $30 per month for Tillie's keep should be paid out of the bank account, "And should the bank account be insufficient to properly provide first party (Tillie Ganser) with clothing and expenses of sickness and accident and funeral expenses, second parties (The plaintiffs and Vergie) agree to jointly and individually furnish such necessary expenses."

If the $1,737.10 had not been deposited in the bank the plaintiffs and Vergie would have had that much more to pay for the mother's care and upkeep. In other words they used the money that should have gone to Vergie to pay an obligation they owed to their mother under the above quoted agreement. In addition to that sum Frank's note of $350 and interest is still unpaid.

To my mind, therefore, the $2,000 for Vergie was available out of the mother's estate at the time the contract was entered into and should have been collected then and paid to Vergie.

However, since the plaintiffs have used that money to pay their own obligation it is only equitable that they pay Vergie the $2,000 with interest, less what she owes on the contract for the care of her mother.

If an accounting were taken now of the total expense for the care of the mother and divided among the six children, crediting each for what he or she has paid towards the cost of the care of the mother, such accounting would show the $1,737.10 included therein, which, together with the $350 note of Frank, would be sufficient not only to pay Vergie the $2,000 and interest, but also to pay Katherine and George for any overpayment they have made. By paying Vergie, which they must do before delivery of the deeds to them, they are only satisfying their own obligations under the agreement with their mother.