John J. DVORAK, Plaintiff and Respondent,

v.

Arnold KUHN, Defendant and Appellant.

Civ. No. 8571.

Supreme Court of North Dakota.

Feb. 18, 1970.

Rehearing Denied March 10, 1970.

Freed, Dynes & Malloy, Dickinson, for plaintiff and respondent.

Greenwood, Swanson, Murtha & Moench, Dickinson, for defendant and appellant.

STRUTZ, Judge.

This action grew out of the sale of certain real estate at public auction. The plaintiff, at the time the alleged cause of action arose, was a single man, having been divorced. He owned certain tracts of land totaling 680 acres, with buildings on some of the property. After he had decided to sell his farming interests, he next determined that he would sell at public auction. In carrying out such decision, he engaged a licensed auctioneer to conduct the sale and secured the services of the Liberty National Bank of Dickinson, North Dakota, to clerk the sale.

The auction was held on October 7, 1968. A large crowd was in attendance. When the land was about to be sold the auctioneer announced that it would first be offered in five separate parcels, with the understanding that the high bid on each separate parcel would not be accepted immediately as the final bid. Instead, after high bids had been received on all five tracts, the average per-acre bid would be computed and the entire tract then would be offered as one unit at a figure per acre slightly in excess of the average per-acre bid which had been received on the five parcels. It was to be understood that the

bidding then would proceed from such figure. If no bids were received for the entire unit which would exceed the average per-acre bid received on the five separate tracts, the sale would be closed and the land would be struck off to the persons who had made the high bid on each of the five separate parcels. If, however, a bid in excess of the average per-acre price so bid on the separate tracts was received on the land as a unit, the land would be struck off to the highest bidder for the entire tract.

After the land had been offered for sale in five separate parcels, and a high bid had been received on each parcel, the sale was temporarily halted while the clerk computed the average per-acre bid so received. This was computed by the clerk to have been $72.84 per acre. The computation so made by the clerk was erroneous, however, because the actual per-acre bid received on the land when offered in separate parcels in reality had been $81.70.

After such erroneous computation had been made, the land was offered as an entire unit for an opening figure of $73 per acre, or slightly in excess of the per-acre bid as computed by the clerk. The high bid received for the land, when so offered as a unit, was $77 per acre. This was the bid made by the defendant, and the land was struck off to him at that price as having been the best and highest bid obtainable.

The plaintiff and his wife (whom he had remarried after the date of the auction sale) executed a warranty deed to the land conveying it to the defendant. This deed was mailed to the plaintiff's attorney. The deed was placed in the hands of the defendant's attorney for the purpose of examination, and thereafter, by agreement of the two attorneys of the parties, such deed was delivered to the Liberty National Bank together with an escrow agreement which had been signed by the attorneys. The record discloses that there was an unpaid mortgage owing by the plaintiff against the land, that there were some unpaid taxes due on the land, and that a judgment against the plaintiff, which was a lien on all the land, remained unpaid. The escrow agreement provided that the bank, as escrow agent, was to pay these items out of the purchase money which the defendant was to deliver to the bank; that upon payment of such purchase money, the bank would deliver the deed to the defendant. After the payment of the purchase money by the defendant to the bank, but before the bank had had an opportunity to pay all of the above-mentioned items and before deed actually was delivered by the bank to the defendant, the plaintiff discovered the error which the clerk had made in computing the average per-acre bid on the land when it was offered in separate tracts. Upon making this discovery, the plaintiff served upon the defendant and upon the bank a written demand for return of his warranty deed, at the same time authorizing the bank to return to the defendant the purchase money which the defendant had paid to the bank.

The record discloses that the auctioneer did not execute a memorandum of sale, binding the parties to a contract of sale of the real estate, as he was authorized to do under Section 3–05–02, North Dakota Century Code.

On the above record, the trial court found in favor of the plaintiff, holding that the sale to the defendant was the result of a mistake in computation of the average per-acre price and that as a result of such mistake the auctioneer struck off the entire tract to the defendant as the highest bidder, whereas he was not, in fact, the highest bidder; that in reliance upon such mistake in computation the plaintiff made and executed the warranty deed, which deed was left with a purported escrow agreement at the Liberty National Bank for the purpose of payment of the mortgage, taxes, and judgment owed by the plaintiff, as seller; that immediately upon discovery of the mistake in computation of the average per-acre bid on such land and before the actual

delivery of the deed by the bank to the defendant, the plaintiff acted to rescind and tendered back the purchase price; that because the plaintiff did not sign the escrow agreement, which had been signed by his attorney, there is no memorandum in writing which was binding upon the plaintiff, as seller of the real estate, as required by the statute of frauds; that the execution and delivery to the bank of the warranty deed by the plaintiff was insufficient to satisfy the provisions of the statute of frauds. The court also dismissed the defendant's counterclaim against the plaintiff for libel for stating that the defendant, with others at the sale, had unfairly and illegally agreed not to bid competitively.

From judgment entered in the district court for the plaintiff, setting aside the sale of the real property to the defendant, and from judgment dismissing defendant's counterclaim against the plaintiff for libel, the defendant has prosecuted his appeal to this court, demanding a trial de novo.

Numerous errors are urged by the defendant in support of his appeal. Since the trial court found that the auctioneer struck off the land to the defendant as highest bidder because of a mistake, and that the plaintiff, in reliance upon such mistake, made, executed, and delivered the warranty deed to the land, we first will consider the question of whether there was a valid sale of the land or whether the mistake of the clerk in computing the average per-acre bid on the five separate tracts was a mistake which would make the entire sale invalid.

■ The clerk in an auction sale is primarily the agent of the owner of the property being sold. Thus the general rules of agency apply. 7 C.J.S. Auctions and Auctioneers, § 6-a, p. 1247, n. 65. This court has held that a person hired to clerk an auction sale is the agent of the owner of the property being sold, where such owner hires the clerk. Posey v. Stutsman County Bank, 48 N.D. 1099, 189 N.W. 315 (1922). The property sold in *Posey* was personal property, but we do not believe that this would change the relationship of the seller and the person he hired to clerk the auction.

Our statute classifies "mistakes" as either of fact or of law. Sec. 9-03-12, N.D.C.C.

■ A "mistake of fact" is defined by Section 9-03-13, North Dakota Century Code, as a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:

"1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

"2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed."

The mistake of the clerk in computing the average per-acre bid for the land being sold was a mistake of fact. It was the mistake of the seller, because it was made by his agent. Both of the parties, in fact, were under the mistaken belief that the land, when offered for sale as a unit, was being offered for the average per-acre bid which had been offered for the land when it was offered as separate parcels, and that the bidding was being started at such figure. Thus the consent of the parties was not free, but was based on mistake. The consent of a party to a contract is not free where it is given through mistake. Sec. 9-03-03(5), N.D.C.C.

The mistake was the belief on the part of the plaintiff, as seller, in the existence of a thing material to the contract which did not exist, to wit, that the bid for the land as a unit equalled the average per-acre bid received when the land was offered in separate parcels. The mistake obviously was not due to anything which the defendant, as buyer, had done.

The modern—and, we believe, the better—rule for rescission of a contract for mistake is set forth in 12 C.J.S. Cancellation

of Instruments, § 27–b(3), page 980, where we read:

"The power to cancel for mistake should not be exercised against a party whose conduct has in no way contributed to or induced the mistake, and who will obtain no unconscionable advantage thereby."

The same rule is found in 13 Am.Jur.2d Cancellation of Instruments, Section 32, page 524, where the writer says:

"* * * but cancellation should not be decreed against a party whose conduct did not contribute to or induce the mistake and who will obtain no unconscionable advantage therefrom."

Thus rescission, as a general rule, will not be decreed against a party—the buyer, in this case—whose conduct did not contribute to or cause the mistake, unless such party should obtain an unconscionable advantage by reason of such mistake. While, ordinarily, we do not believe that a mistake which results in a seller's receiving $3,200 less for property than he would have received if it had not been for such mistake, thus receiving approximately six per cent less for the property because of the mistake, would be considered as giving the buyer an unconscionable advantage; however, where all of the persons at the sale impliedly agreed that the starting bid for the property, when offered as a unit, would at least equal the average per-acre bid received for the land when offered in separate parcels, we believe that denying rescission under such circumstances would be giving to the buyer an unconscionable advantage, an advantage which he himself knew he should not have.

The plaintiff in this action seeks not only rescission of the contract, but asks that title to the land be quieted in him. This court on several occasions has held that rescission of a contract, whether the object of a suit in equity or an action at law, is governed by equitable principles. Volk v. Volk, 121 N.W.2d 701 (N.D.1963);

Fedorenko v. Rudman, 71 N.W.2d 332 (N.D.1955). Applying equitable principles to the case before us, we find that it would be inequitable if we permitted the defendant, as buyer, to purchase this property for less than the plaintiff had been offered when bids were received on the five separate parcels. We therefore order that if the defendant will pay to the plaintiff the sum of $82 per acre, which is slightly in excess of the amount of the average per-acre bid of $81.70 received when the land was offered in five separate parcels, and thereby increase the purchase price from $52,360 to $55,760, rescission of the contract on the ground of mistake will be denied.

We next consider the plaintiff's contention that even if he were not entitled to an order of rescission, which he seeks, title to the land should be quieted in him because no valid contract ever was entered into between the parties. He concedes that he and his wife did make and execute a warranty deed to the premises, conveying this property to the defendant, and that he mailed the deed to his attorney with instructions to deliver it to the defendant on payment of the purchase money. The plaintiff's attorney admittedly deposited the deed with the Liberty National Bank, together with an escrow agreement which had been executed and signed by the attorneys for the parties. It is further admitted that, on the same day that the deed and the escrow agreement were left with the bank, the defendant paid the full purchase price to the bank. The deed and the purchase money were held by the bank at the time the mistake above referred to was discovered by the plaintiff, who immediately made demand for return of his warranty deed and for rescission of the contract. The trial court found that since the plaintiff's attorney did not have written authority to sell the property, he had no authority to sign the escrow agreement, and that the agreement therefore was not binding on the plaintiff.

The warranty deed in this case satisfies all the requirements of the statute of

frauds, provided the statement of consideration as "Ten and more DOLLARS" is a sufficient recital of the consideration and provided, further, that there was a sufficient delivery of the deed to the defendant.

■ This court has held that under the statute of frauds a written memorandum to sell real estate must substantially contain all of the provisions of the agreement, including consideration. Heinzeroth v. Bentz, 116 N.W.2d 611 (N.D.1962). However, the statute of frauds has no application where there has been full and complete performance of the agreement by one of the contracting parties and acceptance of such performance by the other, and the only part of the agreement remaining to be performed is not required to be put in writing. Erickson v. Wiper, 33 N.D. 193, 157 N.W. 592 (1916).

In the case before us, the plaintiff, as seller, had executed the deed and had forwarded it to his attorney for delivery to the defendant, as buyer, upon the payment of the purchase price. However, there were certain liens and obligations on the land which had to be paid and cleared by the plaintiff, and it appears that the plaintiff wanted these to be paid out of the purchase money. Therefore, the attorneys for the parties arranged for the delivery of the deed in escrow to the Liberty National Bank in order to take care of these obligations of the plaintiff. The escrow agreement was in writing, but it was signed by the attorneys and not by the parties. The bank had agreed in writing to act as escrow agent.

■ We are of the opinion that consideration of the escrow agreement is not necessary to a determination of this case. An escrow agreement need not be in writing. In 28 Am.Jur.2d Escrow, Section 5, page 9, we read:

"The condition upon which an instrument is delivered in escrow need not be expressed in writing, but may rest in parol or be in part written and in part oral."

In line with this rule, this court has held that a valid escrow may be made by oral agreement, and its existence may be shown by circumstances and by conduct of the parties indicating their intention. Ganser v. Zimmerman, 80 N.W.2d 828 (N.D.1956); Kunick v. Trout, 85 N.W.2d 438 (N.D. 1957).

■ The plaintiff's attorney had the deed in his possession, and he represented the plaintiff. He agreed with the defendant's attorney that the deed be deposited with the bank on condition that it be delivered to the defendant or his attorney on payment of the purchase money. The bank, as agent of both parties, agreed to accept the deed on this condition, and to accept the purchase money and to disburse the purchase money in accordance with the terms of the escrow agreement. When the defendant paid the purchase money to the bank, the bank was obliged to deliver the deed to him. The sale then was complete, with the bank thereafter being required to pay off the obligations of the plaintiff in accordance with the escrow agreement. Thus the agreement had been completely performed when the defendant paid the purchase money. The only act remaining to be performed after that was the payment of the obligations of the plaintiff constituting liens on the land, which act was not required to be put in writing under the statute of frauds. The statute of frauds had no further application to this contract. Therefore, when the defendant paid the purchase money to the bank, he was entitled to the deed and it then was too late for the plaintiff to claim that the transaction was void on the basis of the statute of frauds.

Finally, the defendant asserts that the trial court erred in dismissing his counterclaim for libel against the plaintiff. In his demand for return of his warranty deed, which demand· was served upon the

Liberty National Bank and upon the defendant, the plaintiff stated:

"2. The said Arnold Kuhn and various other bidders at the sale unfairly and illegally agreed not to bid competitively and therefore the sale in fact was not an open and competitive one as contemplated by law."

The record discloses that the plaintiff introduced no evidence to substantiate this charge.

Civil "libel" is defined by statute in North Dakota as follows:

"Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Sec. 14–02–03, N.D.C.C.

■ In order for libel to be actionable, there must be a publication. This court has held that publication of allegedly defamatory matter is the communication of it to a third party. Rickbeil v. Grafton Deaconess Hospital, 74 N.D. 525, 23 N.W. 2d 247, 166 A.L.R. 99 (1946).

In *Rickbeil,* the majority of this court held that the mere dictation of the allegedly libelous matter by the secretary of the defendant to his stenographer and the transcribing of her notes by the stenographer constituted a publication regardless of whether the relationship between the person dictating the letter and the stenographer was that of master and servant or that of coemployees.

■ In determining whether words used are libelous and actionable, the entire publication should be construed for the purpose of determining the meaning of that portion complained of. Ellsworth v. Martindale-Hubbell Law Directory, 69 N.D. 610, 289 N.W. 101 (1939).

In *Rickbeil, supra,* the libelous matter complained of charged the plaintiff with commission of a crime and promised that the writer would see that the plaintiff was put in the penitentiary. In the case at bar, the words claimed to be libelous were contained in the demand for return of the warranty deed. The demand first stated that the auctioneer and the clerk erroneously rejected bids for the land that were higher than the bid of the defendant, which was announced as the highest bid received, when, in fact, the defendant was not the highest bidder. That statement is followed by the words claimed to be libelous, to the effect that the defendant and others unfairly and illegally agreed not to bid competitively. This charged the doing of an act for which the sale could have been invalidated, but it did not charge the defendant with the commission of any act which could be punished as a crime. Furthermore, the demand which contained the allegedly libelous material, so far as the record discloses, was served upon only one person at the bank, the same person who had clerked the sale, and upon the defendant. Upon receipt of such demand, the defendant served upon the plaintiff a written demand for retraction. Upon receipt of such demand for retraction, the plaintiff, in an instrument signed by himself and by his wife, and the plaintiff's attorney, in a letter to the defendant's attorney, stated that the language used was regretted and that there was no intention on the part of the plaintiff to accuse the defendant of any wrongdoing, and that the only purpose of the statement contained in the demand for return of the warranty deed was to state the reason the demand was being served. This retraction also was served upon the bank, the party to whom publication of the allegedly libelous matter was made. Such retraction was made before the defendant had served the counterclaim for libel upon the plaintiff.

Our statute provides for retraction in cases of libel suits against newspapers. Sec. 14–02–08, N.D.C.C. However, a number of jurisdictions have held that even in

cases against defendants other than newspapers, a retraction or an apology actually made before the commencement of the suit for libel may be shown in mitigation of damages. 53 C.J.S. Libel and Slander, § 257, p. 371.

In this case, the publication of the allegedly libelous matter was made to one person, the banker. He was fully acquainted with all of the events which had occurred at the auction sale, for he had been the clerk at such sale. When the demand for return of the warranty deed, which contained the allegedly libelous matter, was served upon him, the defendant demanded a retraction, and the plaintiff served a retraction and an apology of his attorney prior to the commencement of the action for libel by the service of counterclaim to the plaintiff's complaint.

The defendant in his appeal has demanded a trial de novo. We have repeatedly held that on appeal from a judgment in an action tried to the court without a jury, where the appellant demands a trial de novo, this court will try the case anew, giving appreciable weight to the findings of the trial court. Johnson v. Davis, 140 N.W.2d 703 (N.D.1966); Bertsch v. Zahn, 141 N.W.2d 792 (N.D. 1966); Frederickson v. Hjelle, 149 N.W.2d 733 (N.D.1967); Verry v. Murphy, 163 N.W.2d 721 (N.D.1968).

Here, the allegedly libelous matter consisted of the statement that the defendant had unfairly and illegally agreed not to bid competitively at the sale. The words were not libelous per se. So the defendant had the burden of showing that the claimed libelous matter exposed him to hatred, contempt, or obloquy, or caused him to be shunned or avoided, or injured him in his occupation.

The trial court found that the defendant did not introduce any evidence to indicate that he was in any way damaged by the alleged libel, and the record supports such finding. Therefore, the action of the trial court dismissing the counterclaim is affirmed on appeal.

The judgment of the district court granting rescission is reversed, on condition that the defendant exercise, within forty-five days from date of judgment on remittitur, the option granted herein to purchase the land. The record discloses that, except for an undetermined amount which may have been used to pay some of the liens on the land for moneys owed by the plaintiff prior to demand for rescission of the sale, the purchase money has been invested in thirty-day United States debentures. Pending this litigation, the plaintiff has been in possession of the land. We therefore order that, for the use of such land by the plaintiff, the defendant shall be entitled to the interest paid on the United States debentures and that, for such sums as may have been disbursed in payment of some of the liens prior to the demand for rescission, the plaintiff shall pay to the defendant interest at the rate of six per cent per annum.

The judgment of the trial court dismissing defendant's counterclaim for libel is affirmed.

The case is remanded to the district court with instructions to enter judgment in conformity with this decision.

TEIGEN, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.