GEORGE N. SILENCE ET AL., APPELLANTS, IMPLEADED WITH JOHNNY'S AMERICAN INN, INC., APPELLEE, V. JOURNAL STAR PRINTING COMPANY ET AL., APPELLEES.

266 N. W. 2d 533

Filed June 7, 1978. No. 41556.

D. C. Bradford, III, and John B. Ashford of Bradford & Coenen, for appellants.

Alan E. Peterson of Cline, Williams, Wright, Johnson & Oldfather, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BOSLAUGH, J.

The plaintiffs George N. Silence and David J. Vivian appeal from an order sustaining the defendants' motion for summary judgment as to two causes of action in a suit for libel. The plaintiffs were the owners and operators of a restaurant known as "Here's Johnny's" in Lincoln, Nebraska. Early in the evening of May 19, 1971, Jeannie Sousek and Al E. Benes drank some coffee at the plaintiffs' restaurant. Several hours later they became ill. According to a news story published in the Lincoln Evening Journal on May 20, 1971, they were treated at a hospital for having consumed a weak solution of methamphetamine or "speed." A similar news story was published in the Lincoln Star on May 21, 1971, and a longer story in the Sunday Journal and Star on May 23, 1971. The plaintiffs alleged five causes of action against the defendants based upon the publication of the three news stories.

The evidence at the hearing on the motion shows that the information upon which the original stories were based was obtained from a police report and a telephone interview between a newspaper reporter and Dr. Robert L. Heines who had treated Sousek and Benes. The news stories related that, according

to the police, Dr. Heines had told the police that the coffee contained a weak solution of methamphetamine or "speed." The plaintiffs alleged that the statement attributed to Dr. Heines was false. The first three causes of action are based upon the news stories published in the Lincoln Evening Journal on May 20, 1971, in the Lincoln Star on May 21, 1971, and in the Sunday Journal and Star on May 23, 1971, which stated that the police said Dr. Heines had said that the coffee had contained a weak solution of methamphetamine or "speed." The motion for summary judgment was overruled as to the first three causes of action.

The fourth cause of action was based upon a statement contained in the news story published in the Sunday Journal and Star that the two police officers, Franklin and Underhill, who had been sent to the restaurant at 12:18 a.m., on May 20, 1971, had reported "that the coffee had already been dumped by the time Miss Sousek contacted Thompson so no sample was obtained for laboratory testing." Thompson was the manager of the restaurant.

The plaintiffs alleged that by stating that the coffee containing "speed" was "dumped," the defendants meant and would be understood by their subscribers and others to mean that plaintiffs sought to destroy evidence.

The fifth cause of action was also based upon a statement contained in the news story published in the Sunday Journal and Star. The story concluded with the following item relating to an incident that had occurred in Omaha, Nebraska:

"LSD in Chocolate

"An incident involving an Omaha girl who allegedly ate an LSD-laced piece of chocolate candy last week raised the question of whether the act of one person in knowingly drugging another, unsuspecting person is punishable under Nebraska law.

"The girl, Marilyn Cleveland, said she found a

piece of chocolate candy in her purse May 11, ate it, developed a severe reaction and was hospitalized for 3½ days.

"Although the incident was not officially reported to Omaha police, Deputy Douglas County Attorney Francis Pane said that if a person were charged with drugging someone without his knowledge, he could be punished under the state's drug laws. According to Pane, the person would be guilty of the 'unlawful sale, delivery or other disposition of a depressant or stimulant drug.'

"Conviction for a first offense, according to the state statute, 28-489, would mean a fine from $500 to $3,000, or imprisonment for from two to five years, or both."

The plaintiffs alleged that by heading that part of the article "LSD in Chocolate" and placing it in the story in the manner in which it was done, the defendants meant and would be understood by their subscribers and others to mean that the plaintiffs offered for sale to the public chocolates containing a dangerous drug.

With respect to the fourth cause of action the trial court found the statement that the police officers reported that "the coffee had already been dumped by the time Miss Sousek contacted Thompson" was not libelous, and the plaintiffs' contention that the use of the word "dumped" implied an attempt to cover a criminal act or destroy evidence was illogical and not supported by the publication.

As to the fifth cause of action the trial court found the statements concerning the Omaha incident involving chocolate candy containing LSD was not libelous. The court noted that the girl involved in the incident was from Omaha and the story contained a reference to the Omaha police department and the deputy Douglas County attorney. The trial court concluded that it was clear from the story that

the incident took place in Omaha and not at the plaintiffs' restaurant.

The trial court found there was no evidence as to falsity, malice, reckless disregard for the truth, or lack of reasonable care and diligence to ascertain the truth in regard to the matters alleged in the fourth and fifth causes of action.

It is fundamental that the publication complained of in an action for libel be libelous. In the first instance it is a question of law for the court as to whether a particular publication was libelous. National Automobile Assn. v. Strunk, 122 Neb. 890, 240 N. W. 294; Rhodes v. Star Herald Printing Co., 173 Neb. 496, 113 N. W. 2d 658; Treutler v. Meredith Corp., 455 F. 2d 255; Restatement, Torts 2d, § 614, p. 311.

In determining whether the language of a publication was libelous the statement is to be interpreted in its ordinary and popular sense. Tennyson v. Werthman, 167 Neb. 208, 92 N. W. 2d 559. The court will not put a forced construction on words which may fairly be deemed harmless. World Publishing Co. v. Mullen, 43 Neb. 126, 61 N. W. 108.

We think the trial court's interpretation of the publication alleged in the fourth and fifth causes of action was correct. In view of the interval that occurred between the time the coffee was consumed and the illness occurred it was not unusual that the restaurant had emptied the containers. The use of the word "dumped" under these circumstances did not imply any misconduct on the part of the restaurant personnel.

The story concerning the chocolate candy incident in Omaha is equally clear. A fair reading of the story shows that there was no connection, express or implied, between the plaintiffs' restaurant and the candy.

Since the publication complained of was not libelous it is unnecessary to the decision in this case to

consider the contentions of the parties as to whether the plaintiffs were "public figures."

The judgments are affirmed.

AFFIRMED.

SPENCER, J., concurring.

I concur in the opinion of the court that summary judgment was properly entered on plaintiffs' fourth and fifth causes of action. I note, however, that in the order overruling the motion for summary judgment as to the first three causes of action and sustaining it as to the last two, the trial court specifically held that the plaintiffs-appellants, who were doing business as Johnny's American Inn, Inc., were public figures. He further held that as public figures they were bound by the rule enunciated in New York Times Co. v. Sullivan, 376 U. S. 254, 84 S. Ct. 710, 11 L. Ed 2d 686 (1964).

In my judgment the trial court is wrong in holding that appellants are public figures. If the operators of a restaurant are public figures, the operator of any other service business would be. The Supreme Court, in Gertz v. Robert Welch, Inc., 418 U. S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974), and Time, Inc. v. Firestone, 424 U. S. 448, 96 S. Ct. 958, 47 L. Ed. 2d 154 (1976), narrowed the rule as to public figures. In Gertz, it defined public figures as those who occupy positions of such persuasive power and influence that they are deemed public figures for all purposes or those who have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved.

I write this concurrence because the real point at issue in the balance of this case is whether or not the appellants are public figures. If they are not, the libel rules enunciated in Gertz and Firestone, rather than the New York Times v. Sullivan rule, should control.

WHITE, C. J., BRODKEY, and WHITE, C. THOMAS, JJ., join in this concurrence.