DENNY, Plaintiff-Respondent, v. MERTZ, and another, Defendants-Appellants.

*No. 76–186. Submitted on briefs May 3, 1978.—
Decided June 30, 1978.*
(Also reported in 267 N.W.2d 304.)

For the appellant, McGraw-Hill, Inc., the cause was submitted on the briefs of *Don S. Peterson*, and *Whyte & Hirschboeck, S.C.*, of Milwaukee.

For the appellant, Orville R. Mertz, the cause was submitted on the brief of *L. C. Hammond, Jr., Michael J. Conlan*, and *Quarles & Brady* of Milwaukee.

For the respondent the cause was submitted on the brief of *Andrew O. Riteris,* and *Michael, Best & Friedrich* of Milwaukee.

DAY, J. These are appeals from an order in a libel suit. The order dismissed, and in effect denied, two separate motions to dismiss a complaint for failure to state a claim upon which relief could be granted. The plaintiff-respondent, William A. Denny (plaintiff) filed the complaint on April 12, 1976, alleging that defendants-appellants, Orville R. Mertz and McGraw-Hill, Inc. (Mr. Mertz and McGraw-Hill) defamed him.[1] Mr. Mertz is alleged to have defamed plaintiff by telling an interviewer from McGraw-Hill that Mr. Mertz had fired the plaintiff. McGraw-Hill is alleged to have defamed the plaintiff by publishing Mertz's statement that he had fired plaintiff. Both defendants appealed from the order denying their motions to dismiss.

The issue is whether a false statement that an attorney was "fired" is capable of being understood in a defamatory sense by reasonable people in the community. We hold that such a statement is capable of being understood in a defamatory sense.

The facts alleged in the complaint are assumed to be true for purposes of passing on the sufficiency of the complaint. *Clark v. Corby,* 75 Wis.2d 292, 301, 249 N.W.2d 567 (1977).[2] The facts in the complaint are as

[1] After publication of the article the plaintiff made a written demand for correction pursuant to sec. 895.05(2), Stats. 1975.

[2] *Clark* involved a demurrer under the old sec. 263.06(6), Stats. (1973) and this case involves a motion to dismiss for failure to state a claim under sec. 802.06(2)(f), Stats. 1975. However,

"The motion to dismiss for failure to state a claim upon which relief can be granted serves basically the same function as the demurrer for failure to state ultimate facts constituting a cause of action under former section 263.06(6), that is, to test the legal

follows: The plaintiff was employed by Koehring Company from 1954 until June of 1969. On June 30, 1969, when the plaintiff was senior staff attorney, he resigned from Koehring to go into the private practice of law in which practice he was still engaged as of June 11, 1976.

From 1953 until December 5, 1975 defendant Orville Mertz was employed by Koehring Company in various executive capacities.

Defendant, McGraw-Hill, Inc., is a foreign corporation that publishes, among other things, a widely circulated weekly magazine called *Business Week*.

Prior to December 5, 1975, various Koehring Company shareholders, including Denny, were openly critical to the Koehring Company board of directors, regarding the performance of defendant Mertz as the chief executive officer of Koehring Company.

On or about December 5, 1976 defendant Mertz was terminated as chief executive officer at Koehring Company. Mertz attributed the termination to recent shareholder controversies that had focused on senior management at Koehring Company.

In December, 1975 *Business Week* collected information for an article to be published about the change in management at Koehring Company. *Business Week* interviewed various present and former Koehring managers, including Mr. Mertz. The complaint alleges that Mertz told *Business Week* that the plaintiff had left his employment at Koehring because Mertz had fired him.

In the January 19, 1976 issue of *Business Week* an article appeared entitled, "Top Management Ferment At Koehring." Among other things, the article stated that,

"Mertz now claims he was the target of a 'harassment campaign' by the dissidents, who include the

sufficiency of the complaint." *The New Wisconsin Rules Of Civil Procedure*: Chapters 801 to 803. 59 Marquette L. Rev. 1 (1976).

company's largest individual shareholder, a former chairman deposed by Mertz 16 months ago, and a former general counsel. . . .

". . . Also about that time, William Denny, general counsel of Koehring until Mertz fired him in 1969, began to question many of Koehring's management decisions. He even sued the company twice to get minutes of meetings and other information. . . ."

The rest of the *Business Week* article states how a group of Koehring Company minority shareholders, including plaintiff, tried to force defendant Mertz's resignation. The article relates Mertz's actions as Koehring chief executive and implies that he was responsible for low management morale and the company's poor performance in recent years. The article also relates the maneuvering by the dissident minority shareholders to remove Mr. Mertz.

Most of the article concerns Mertz and not the plaintiff. The article does say that the plaintiff was fired by Mertz, but gives no reason for the firing.

On May 4, 1976, McGraw-Hill filed a motion to dismiss the complaint for failure to state a claim pursuant to sec. 802.06(2), Stats. 1975. Defendant Mertz filed a similar motion to dismiss on May 14, 1976.[3]

---

[3] Both of the defendants' motions to dismiss the complaint were made pursuant to sec. 802.06(2)(f), Stats. 1975, for failure to state a claim upon which relief could be granted. However, sec. 802.06(2), Stats. provides in pertinent part that,

"If on a motion asserting the defense described in (f) to dismiss for failure of the pleading to state a claim upon which relief can be granted . . . matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.-08, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by s. 802.08."

In this case a number of affidavits and exhibits were ". . . presented to and not excluded by the trial court." These affidavits and exhibits appear in the record. We find most of this material irrelevant to the issue on this appeal, but a copy of the allegedly

Following a hearing on the motions on June 14, 1976, Judge Voss denied both motions to dismiss in a decision of August 25, 1976 and by order of September 13, 1976. The defendants appealed from the September 13th order.

On June 13, 1977 the plaintiff moved for summary affirmance of the trial court's order. On July 15, 1977 this court denied the motion for summary affirmance.

*Westby v. Madison Newspapers, Inc.*, 81 Wis.2d 1, 5, 6, 259 N.W.2d 707 (1977), outlined the basic law of libel in Wisconsin, citing *Schaefer v. State Bar*, 77 Wis.2d 120, 122, 252 N.W.2d 343 (1977).

"Initially, the court has the obligation of deciding whether a communication is capable of a defamatory meaning. . . .

"In *Lathan v. Journal Co.*, 30 Wis.2d 146, 152–53, 140 N.W.2d 417 (1966), we stated:

" 'Defamation has been defined as:

" ' ". . . that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, good-will or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him." Prosser, *supra*, page 756.

" 'In *Schofield v. Milwaukee Free Press Co.* (1905), 126 Wis. 81, 85, 105 N.W. 227, we held that for a newspaper article to be libelous it ". . . need only tend to degrade or disgrace the plaintiff generally or to subject him to public distrust, ridicule, or contempt in the community. . . ."

" 'The Restatement [Torts], *supra*, page 140, sec. 559, provides that:

" ' "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." ' "

In *Schaefer v. State Bar, supra*, at 124, we stated:

" 'If the alleged communication is capable of a defamatory meaning, the demurrer must be overruled; and if

defamatory article was attached to one of these affidavits and will therefore be considered.

the language is of such a character that it is capable of a nondefamatory meaning as well as a defamatory meaning, then a jury question is presented whether such communication was understood in fact in a defamatory sense by the persons to whom it was published. *Martin v. Outboard Marine Corp., supra.* If the communication cannot reasonably be considered defamatory or to be so understood, the demurrer must be sustained.' *Frinzi v. Hanson,* 30 Wis.2d 271, 275–76, 140 N.W.2d 259 (1966)."

The words alleged to be libelous ". . . are to be construed and taken in their plain and popular sense . . ." *Pandow v. Eichstad,* 90 Wis. 298, 300, 63 N.W. 284 (1895).

Words or elements in an article may not be considered in isolation, but must be viewed in the context of the whole article to determine if they are defamatory. *Westby v. Madison Newspapers, Inc.,* 81 Wis.2d 1, 259 N.W.2d 707 (1977); *Waldo v. Journal Co.,* 45 Wis.2d 203, 208, 209, 172 N.W.2d 680 (1969).

Mr. Mertz and McGraw-Hill argue that "firing" is a neutral term and no defamatory meaning can be concluded.[4] However, in previous cases this court has determined that a fact question arose in libel cases where more than one meaning for a word was possible. In *Lathan v. Journal Co.,* 30 Wis.2d 146, 140 N.W.2d 417 (1966), Reverend Lathan, the pastor of a large Baptist church in Milwaukee, sued for libel because of a newspaper article that implied that he was responsible for the non-appearance of the Rev. Martin Luther King, Jr. at a fund raising rally in Milwaukee. This court stated that,

---

[4] McGraw-Hill cites a number of books and articles for the proposition that being fired is a common experience among corporate executives. These materials are not in the record and not properly before the court. Even if the books and articles were proper subjects for judicial notice this argument misses the point. The question is not what is common in the business community, but how would reasonable people in the community react to the information. *Westby* at 81 Wis.2d 6.

"A newspaper article that could reasonably be construed to reflect on his [Rev. Lathan's] administrative ability might well have tended to lower him in the esteem of the community." *Lathan* at 30 Wis.2d 154.

In *Wozniak v. Local 1111 of U. E.*, 57 Wis.2d 725, 734, 205 N.W.2d 369 (1973) the defendant union circulated leaflets to plaintiff's neighbors. The leaflets referred to plaintiff as a scab. On motions before and after verdict the union contended that "scab" was capable of only one meaning. On appeal, this court held that a jury question was presented. That question was whether the use of the word "scab" communicated to the neighbors the idea that plaintiff was a scoundrel, or merely the idea that plaintiff had chosen not to participate in the strike.

Mr. Mertz and McGraw-Hill also rely on cases from other jurisdictions holding that it is not defamatory to state that a person has been fired, dismissed or removed from a position without giving a reason for the removal. *Picard v. Brennan*, 307 A.2d 833 (Me. 1973); *Nichols v. Item Publishers*, 309 N.Y. 596, 132 N.E.2d 860 (1956). However, these cases both applied different libel law than what this court has articulated in *Westby* and the cases cited therein.

In *Picard* the court held that a false charge that a person was fired or dismissed was not slanderous per se. In *Nichols* a false statement that a minister had been removed from his pastorate was not libelous per se. Both New York and Maine, where these cases were decided, follow the rule that a statement may be defamatory if it affects a person in his office, profession or trade.[5]

But these jurisdictions distinguish between libel per se where no special damages need be proven, and other libel cases where such damages must be shown. In

---

[5] *Nichols* at 132 N.E.2d 862. *Picard* at 307 A.2d 834.

*Picard* and *Nichols* there was no mention of any special damages and the court held that the statements were not libelous or defamatory per se. If special damages had been shown in *Picard* or *Nichols* the result might well have been the opposite.

Wisconsin law does not distinguish betwen libel per se and libel based on special damages. In *Martin v. Outboard Marine Corp.*, 15 Wis.2d 452, 460, 461, 113 N.W.2d 135 (1962) this court adopted the position of sec. 569, Restatement, 3 Torts, that all libels are actionable without alleging or proving special damages.[6] Moreover, in judging the sufficiency, of this particular complaint, we note that the plaintiff alleged damage to his reputation in the amount of $500,000.

The defendants contend that the statement that plaintiff was fired could carry no bad connotations that would harm plaintiff's reputation in the community. The complaint alleges that the plaintiff was defamed because of a false statement that he was fired by Koehring. The *Business Week* article gave no reasons for the firing. It does not say that the firing was for incompetence or cause or for any particular reason at all.

The defendants also argue that the article as a whole tends to vindicate the plaintiff. The article is much more critical of defendant Mertz than it is of the plaintiff. The plaintiff is mentioned as a member of a group

---

[6] Restatement, 3 Torts, Defamation, p. 165, sec. 569:

*"Liability Without Proof Of Special Harm, When Imposed— Libel.*

"One who falsely, and without a privilege to do so, publishes matter defamatory to another in such a manner as to make the publication a libel is liable to the other although no special harm or loss of reputation results therefrom."

Defamation is defined in sec. 559, p. 140, as "A communication [that] tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."

of dissidents who questioned Mertz's bad management decisions and who were successful in a rare example of corporate democracy. The major portion of the article certainly does not defame plaintiff, but there is nothing in the article to suggest that the plaintiff was fired for questioning Mertz's decisions. Such a conclusion might be implied from the article, but then again it might not.

The parties agree that to fire means to discharge from employment peremptorily or summarily.[7] Both the statement that plaintiff was fired and the article as a whole could be understood by reasonable people in a defamatory sense. Reasonable people could conclude that a person's being fired would tend to injure their reputation in the popular sense or to diminish the respect or esteem that people have for him. Whether the article would actually have that effect is a question for the jury. We only hold that this complaint is not legally insufficient to state a claim.

*By the Court.*—Order affirmed.

[7] *Webster's Third New International Dictionary* (G. & C. Merriam Co. 1961), p. 854.