**Mrs. David MORITZ (Judy), Plaintiff and Appellant,**

v.

**MEDICAL ARTS CLINIC, P. C., and Lynn W. Aas, Defendants and Appellees.**

Civ. No. 10036.

Supreme Court of North Dakota.

Jan. 19, 1982.

Frederick E. Saefke, Jr., Bismarck, for plaintiff and appellant.

Zuger & Bucklin, Bismarck, for defendants and appellees; argued by Murray G. Sagsveen, Bismarck.

WILLIAM F. HODNY, District Judge.

Plaintiff appeals from a summary judgment dismissing her complaint and from an order allowing attorney's fees.

In August of 1979, plaintiff compromised and settled a suit she had brought for compensatory and punitive damage against a hospital and against a doctor who was a

stockholder and employee of defendant Clinic.

Sometime later, plaintiff received the following letter dated December 6, 1979, written by the manager of the defendant Clinic.

"This letter is written to inform you that the Medical Arts Clinic, P.C. and all of the physicians associated with the clinic wish to withdraw from further treatment and attention of your medical problems and also those of any member of your immediate family.

"The reason for this withdrawal should be obvious to you. The physicians are extremely uncomfortable treating you and do not find that they can do so in the physician-patient relationship that they would want to offer. Your past actions have made it difficult for them to accept you as a patient.

"The Medical Arts Clinic, P.C. and the physicians associated with the group respectfully ask you to place yourself and other members of your family in the care of some other physician in this community. The Medical Arts Clinic physicians will continue to care for you until you have placed yourself under the care of that other doctor, but not exceeding ten days from the date of this letter. This should give you ample time to select a physician of your choice from the many competent practitioners in the city. With your approval, the Medical Arts Clinic will make available to your physician your case histories and information regarding the diagnosis and treatment which have been received at the Medical Arts Clinic."

Plaintiff then brought an action against Medical Arts Clinic, the Clinic manager, and 23 of the physicians associated with the Clinic alleging that the letter is defamatory and was published.

The Clinic and the doctors brought a motion before Judge Berning to dismiss the action. The court treated it as a motion for summary judgment under Rule 12(b)(5) North Dakota Rules of Civil Procedure, and pursuant to Rule 21 and 56 thereof dismissed the action against all 23 of the doctors named in the complaint but otherwise denied the motion to dismiss allowing the action against the Clinic and its manager to continue. No appeal has been taken from this dismissal. Subsequently Judge Berning found cause to recuse himself, and as a result Judge Beede was assigned to the case.

After discovery proceedings, the Clinic made a motion before Judge Beede for summary judgment of dismissal, which was granted.[1] The Court also found Plaintiff's claim for relief to be frivolous and granted a motion allowing attorney's fees to the Clinic in the amount of $7,611.00. Judgment was entered and plaintiff has appealed. This Court is required to determine if granting the motion for summary judgment was appropriate and whether the granting of attorney fees under Section 28–26–01 was proper.

We shall first deal with the motion and the matter of the alleged defamation.

Section 4 of Article I of the North Dakota Constitution provides as follows:

"Every man may freely write, speak and publish his opinion on all subjects, being responsible for the abuse of that privilege. In all civil and criminal trials for libel the truth may be given in evidence, and shall be a sufficient defense when the matter is published with good motives and for justifiable ends; and the jury shall have the same power of giving a general verdict as in other cases; and in all indictments or informations for libels the jury shall have the right to determine the law and the facts under the direction of the court as in other cases."[2]

---

1. Judge Beede did not issue a memorandum opinion, but his order contained a statement "... that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law."

2. Even though this constitutional provision provides that the jury shall have the right to determine the law, the court still retains its function to determine whether the element can be defamatory. Restatement Second, Torts, § 614, Comment C.

North Dakota Century Code Section 14–02–01 provides that every person has the right of protection from defamation. This court in *McCue v. Equity Cooperative Publishing Co. of Fargo*, 39 N.D. 190, 167 N.W. 225 (1918), said that every man may freely write, speak and publish his opinions on all subjects but is responsible for an abuse of that privilege to any person injured by such abuse.

North Dakota Century Code Ch. 14–02, Personal Rights, classifies defamation as being either libel or slander.

Civil libel is defined in NDCC § 14–02–03, as follows:

"Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

*Lauder v. Jones*, 13 N.D. 525, 101 N.W. 907 (1904) rules that in order to render words defamatory the defamation need not be in direct terms. Defamation may be made indirectly by insinuation, by sarcasm, or by mere questions as well as by direct assertion in positive terms and it is not less actionable because made indirectly; and it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory.

The court observed:

"The decisive question upon the objection that the complaint does not state a cause of action is this: Is the language of the affidavit, standing alone, fairly susceptible of a defamatory meaning? If it is, then the complaint states a cause of action and the case was properly submitted to the jury, for it is well settled that where the language of an alleged libel is fairly susceptible of a construction which renders it defamatory, and therefore actionable, even though it is also susceptible of a construction which would render it innocent, the complaint states a cause of action, good as against demurrer, and it is for the jury to determine whether the words were used in an innocent or defamatory sense."

This principle of law was affirmed in Syllabus ¶ 2 in *Rickbeil v. Grafton Deaconess Hospital*, 74 N.D. 525, 23 N.W.2d 247 (1946). There is no question that summary judgment is not warranted if the letter is capable of two meanings—one defamatory and the other innocent. *McCue v. Equity Coop Pub. Co. of Fargo*, supra.

■ If an innuendo is involved, the question of whether the alleged defamation is fairly warranted by the writing is one of law for the court to decide. Upon finding a reasonable possibility that the ascribed libelous meaning can be given to the material alleged to be defamatory, it is for the jury to determine if the libelous meaning was intended or conveyed. *Ellsworth v. Martindale-Hubbell Law Dictionary*, 69 N.D. 610, 289 N.W. 101 (1940).

In Restatement Second, Torts ¶ 614, the function of the court and jury is discussed. We quote:

"(1) The court determines

"(a) whether a communication is capable of bearing a particular meaning, and

"(b) whether that meaning is defamatory.

"(2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient."

In comment (b) to this section it is said:

"Under the rule stated in this Section, the determination of the first two of these questions is for the court and that of the third for the jury. The court determines whether the communication is capable of bearing the meaning ascribed to it by the plaintiff and whether the meaning so ascribed is defamatory in character. If the court decides against the plaintiff upon either of these questions, there is no further question for the jury to determine and the case is ended."

This is also the holding in *Luthey v. Kronschnabl*, 239 Wis. 375, 1 N.W.2d 799

(1942) Accord 50 AmJur2d, Libel and Slander, § 22. Normally these authorities contemplate the court making its determination after hearing evidence such as a motion for directed verdict. Likewise on a motion for summary judgment if there is no genuine issue of material fact, the court must determine whether the statement is capable of a defamatory meaning.

■ The meaning plaintiff has ascribed to the letter in this case is stated in Paragraphs V and XII of the Complaint as follows:

"V    That said letter openly and flagrantly accuses the plaintiff of wrongful acts or behavior, whether of a direct criminal nature or of a socially immoral or distasteful conduct."

"XII That said publication was intended to convey and did convey, to the community at large, the impression that the plaintiff had committed a crime, or some social or immoral activity with respect to the defendants, and their profession, and it was calculated to, and did, hold the plaintiff up to public scorn, hatred, contempt, ridicule and obloquy, and by such publication, defendants meant, and intended to mean said wrongdoings and was so understood by the readers of said publication."

In determining whether words are libelous and actionable, the entire letter should be construed for the purpose of determining the meaning of that portion complained of. *Dvorak v. Kuhn*, 175 N.W.2d 697 (N.D. 1970). The sense or meaning of the document is determined according to its natural and popular construction. *State v. Haider*, 150 N.W.2d 71 (N.D.1967); *Waldo v. Journal Co.*, 45 Wis.2d 203, 172 N.W.2d 680 (1969); *Silence v. Journal Star Printing Co.*, 201 Neb. 159, 266 N.W.2d 533 (1978).

"The general rule concerning the construction of words is that (in the absence of extrinsic circumstances which convert innocent words into defamatory words) the words must be construed in their natural and ordinary meaning which reasonable men of ordinary intelligence would give them, they must be construed as persons generally understand them and according to their ordinary meaning." *L. H. Eldredge, The Law of Defamation*, § 9 (1978).

Applying these principles to the letter, can it be fairly said that the letter is capable of bearing the meaning ascribed by Plaintiff? Does the letter accuse the Plaintiff "of wrongful acts or behavior, whether of a direct criminal nature or of a socially immoral or distasteful conduct" as is alleged in Paragraph V of the complaint? Does the letter convey "the impression that the Plaintiff had committed a crime, or some social or immoral activity with respect to the Defendants" as alleged in Paragraph XII of the complaint? It is certainly susceptible of an innocent meaning, but is it also susceptible of a defamatory meaning so as to expose plaintiff to hatred, contempt, ridicule or obloquy or cause her to be shunned or avoided, or which has a tendency to injure her in her occupation? Section 14–02–03.

It is our opinion that only a tortured construction of the words of the letter could support such a meaning and even then the reader would have to be predisposed to imagine activities far beyond the ordinary import of the words used. In *State v. Haider*, supra, this court mentioned a classification of words in determining defamation. We quote from that case and conclude that the words used in this case were "obviously innocent: words which cannot properly be construed so as to convey any imputation on the plaintiff." No imagined innuendo can alter the sense or supply a meaning to a document which is not there. *Luthey v. Kronschnabl*, supra. A court will not put a forced construction on words which may fairly be deemed harmless. *Silence v. Journal Star Printing Co.*, supra. The fact that plaintiff places a defamatory connotation on the statement does not make it actionable. *Bistline v. Eberle*, 88 Idaho 473, 401 P.2d 555 (1965). The facts of this case raise no issue of material fact and the determination of the letter as defamatory or innocent

is one for the court since the letter is not in any manner ambiguous. Giving the entire letter a reading in accordance with all of the above authorities leaves us convinced that it cannot support the meaning ascribed by plaintiff nor is it libel as defined in Section 14–02–03.

We agree with Chief Justice Erickstad's opinion that the only recipient of the letter, Linda Creighton, did not understand it in a defamatory sense, and thus there is no issue of genuine issue of material fact. However, since we have determined the letter was not defamatory it was not necessary to go one step further as he has done.

We cannot agree with Justice Sand in his conclusion that whenever extrinsic evidence is needed to determine whether a statement is defamatory or innocent, the statement is ambiguous and should be submitted to a jury. Extrinsic evidence is normally submitted along with a summary judgment motion and if it raises no genuine issue of material fact, summary judgment is appropriate. Nor can the submission and consideration of matters submitted on a summary judgment motion absolve a court of its duty to determine whether the statement can be defamatory, as we have done. In fact, comment (d) to Restatement Second, Torts ¶ 614 states that both the judge and jury in performing their respective functions, take into account all the circumstances surrounding the communication of the matter complained of as defamatory. Rule 56 of the North Dakota Rules of Civil Procedure allows the submission of all sorts of documents on a motion for summary judgment all of which the court is obligated to consider. Evidence in these documents, along with inferences drawn, must be considered in the light most favorable to plaintiff. *Pioneer State Bank v. Johnsrud,* 284 N.W.2d 292 (N.D.1979).

■ However, the mandatory consideration of such materials should not be determinative of whether the statement is ambiguous and possibly defamatory. This reasoning would make summary judgment unavailable in defamation cases. Only when the extrinsic evidence raises a genuine issue of material fact as to whether the statement is defamatory or innocent should summary judgment be precluded. There is no such genuine issue of material fact in this case. Nor can we agree with him that in ruling on a summary judgment motion the court should consider that "... paragraph two of the letter in question can easily trigger the imagination of the reader with uncomplimentary thoughts of the addressee and may create various impressions and suspicions why the termination notice was given." Rather the court must determine the meaning of the words used according to natural and popular construction giving the words their natural and ordinary meaning. Imagination and suspicion are not determinative—the meaning of the words is what counts.

■ Plaintiff has also appealed from an award of attorney fees to defendant made under Section 28–26–01(2) upon a finding that plaintiff's claim for relief was frivolous.

The pertinent part of that statute provides:

"In civil actions the court may, in its discretion, upon a finding that a claim for relief was frivolous, award reasonable actual or statutory costs, or both, including reasonable attorney's fees to the prevailing party. Such costs may be awarded regardless of the good faith of the attorney or client making the claim for relief if there is such a complete absence of actual facts or law that a reasonable person could not have thought a court would render judgment in their favor, providing the prevailing party has in responsive pleadings alleged the frivolous nature of the claim."

We cannot agree that plaintiff's claim for relief is subject to a finding that there is such a complete absence of actual fact or law that a reasonable person could not have thought a court would render judgment in their favor. In the last analysis a case of this type becomes a question of judgment frequently determined by a court. Restatement Second, Torts § 614, Comment d.

That question of judgment has divided this court. Under the facts of this case an award of fees is an abuse of discretion and is reversed.[3] Plaintiff did not appeal from the award of statutory costs.

We affirm the granting of summary judgment, but reverse the order allowing attorney's fees. Neither party shall be awarded costs on this appeal.

LARRY M. HATCH and JOHN O. GA-RAAS, District Judges, concur.

HODNY, HATCH, GARASS, District Judges, sitting in place of PAULSON, PEDERSON, VANDE WALLE, JJ., disqualified.

ERICKSTAD, Chief Justice, concurring specially.

I concur in the result of the majority opinion written by Judge Hodny; however, I believe the summary judgment dismissal should be affirmed on the ground that the only third party to whom Aas' letter was communicated by the Clinic did not understand it in a defamatory sense. With that fact, established by Linda Creighton's affidavit and unrefuted by Judy, it is unnecessary for this Court to decide the issue of whether or not the letter is susceptible of a defamatory meaning.

In order for a libel to be actionable there must be a publication of it to a third party. *Dvorak v. Kuhn,* 175 N.W.2d 697 (N.D. 1970). The Clinic concedes that the letter was published to a third party—Linda Creighton, administrative secretary to Mr. Aas—who typed and mailed the letter to Judy, and it is undisputed that Linda Creighton was the only third party to whom the letter was communicated by the Clinic. With regard to the communication of an allegedly libelous item the Restatement, Second, Torts § 563 (1977) provides the following:

"The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express."

The official comment to the foregoing section highlights its importance to this case:

"... although the person making the communication intends it to convey a defamatory meaning, there is no defamation if the recipient does not so understand it. This is true although the defamatory meaning is so clear that an ordinary person would immediately recognize it.

"... The question to be determined is whether the communication is reasonably understood in a defamatory sense by the recipient.

\*    \*    \*    \*    \*    \*

"It is not enough that the language used is reasonably capable of a defamatory interpretation if the recipient did not in fact so understand it."

In support of its motion for summary judgment the Clinic submitted an affidavit of Linda Creighton indicating that she did not construe the letter in a defamatory sense:

"During late 1979, I handled one or more legal documents concerning a lawsuit by Judy Moritz against Dr. Giltner, a doctor at the Medical Arts Clinic.

\*    \*    \*    \*    \*    \*

"When I typed the letter (listening to the tape on the transcribing machine) and when I proof-read the letter, I remembered the legal documents that I had previously handled. It was my opinion that Mr. Aas sent the letter because of the lawsuit against Dr. Giltner. I did not, and cannot now, think of any other reason why the letter was sent."

According to Linda's affidavit she was aware of Judy's lawsuit against Dr. Giltner and, with that knowledge, she understood the letter to mean that because of the law-

---

3. Perhaps plaintiff's action against the 23 defendants as dismissed by Judge Berning earlier in the case could support a finding under 28–26–01(2) justifying attorney fees. However, his memorandum opinion specifically stated that no costs are awarded to either party and thus we view Judge Beede's order allowing attorney fees as based on that part of the case remaining after Judge Berning's order. There has been no appeal from Judge Berning's order.

suit the Clinic's physicians desired to withdraw from further treatment of Judy and her family.

Actions involving state of mind are not usually suited for disposition by summary judgment. *Zuraff v. Empire Fire & Marine Insurance Co.*, 252 N.W.2d 302 (N.D.1977). Nevertheless, when a motion for summary judgment is made and supported as provided by Rule 56 of the North Dakota Rules of Civil Procedure, an adverse party cannot rest upon the mere allegations or denials of her pleadings; but her response, by affidavit or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), N.D.R.Civ.P.; *Boone v. Estate of Nelson*, 264 N.W.2d 881 (N.D.1978). Through Linda Creighton's affidavit the Clinic demonstrated that the letter was not understood in a defamatory sense. Judy did not respond by affidavit or otherwise to refute Linda's affidavit and, accordingly, has failed to raise a genuine issue of material fact. For that reason I concur with the result of the majority opinion affirming the summary judgment dismissal.

I also concur with the majority opinion in its reversal of the district court's award of attorney's fees to the Clinic.

SAND, Justice, dissenting.

I respectfully dissent for the reasons that in my opinion the majority assumed the role and function of a jury, instead of an appellate court. The majority also ignored the North Dakota constitutional provision, Section 4, Article I, and the case law that has been developed thereunder over many years, all of which are briefly discussed later herein. The real issue before the trial court was, and still is, on appeal: Is the letter, standing alone, fairly susceptible of two meanings—one defamatory, the other innocent, or is it susceptible of only an innocent meaning? If it is susceptible to either one it is a matter for the jury to decide. The issue has not changed—it remains the same on appeal.

The majority, on the topic of summary judgment, did not give adequate consideration to the firm principles of law established that the evidence must be considered in the light most favorable to the party against whom judgment is demanded. In this respect, the majority opinion particularly disregards the case law established in *McCue, infra*, that if extrinsic evidence is needed to determine the statement's true character, than it is a question for the jury to decide with the aid of proper instructions.

The very purpose of using or relying upon extrinsic evidence as an aid in determining the true meaning is an admission that the statement is ambiguous. Pure legal logic dictates this result.

Linda's affidavit and deposition were used by the court. She did not know who else saw the letter, and did not know the nature of the lawsuit.

Whenever plaintiff's proof in support of a claim must necessarily and primarily rely upon cross-examination of a hostile witness, as in this case the secretary (Linda) to the Clinic manager, the affidavit should not be treated as conclusive and the matter is not appropriate for summary judgment. *Sagmiller v. Carlson*, 219 N.W.2d 885 (N.D. 1974). *See also, Weidner v. Engelhart*, 176 N.W.2d 509 (N.D.1970). For that matter, a deposition or affidavit does not give the trier of facts the opportunity to observe the demeanor of the witness and consequently if such live testimony is crucial but is denied, the fair trial concept becomes distorted, if not lacking. There can be no serious question that Linda, as the secretary to the Clinic manager, is a hostile witness.

A summary judgment proceeding is not just another method of trying the facts. The evidence in a summary judgment is not weighed by the court, except in favor of the party against whom summary judgment is sought.

A brief summary of the proceedings will be helpful to understand the situation.

Mrs. David Moritz brought an action against Medical Arts Clinic [Clinic], the Clinic manager, and all of the physicians associated with the Clinic. Her complaint

alleges that the following letter written to her by the Clinic manager, dated 6 Dec 1979, is defamatory and was published:

"This letter is written to inform you that the Medical Arts Clinic, P.C. and all of the physicians associated with the clinic wish to withdraw from further treatment and attention of your medical problems and also those of any member of your immediate family.

"The reason for this withdrawal should be obvious to you. The physicians are extremely uncomfortable treating you and do not find that they can do so in the physician-patient relationship that they would want to offer. Your past actions have made it difficult for them to accept you as a patient.

"The Medical Arts Clinic, P.C. and the physicians associated with the group respectfully ask you to place yourself and other members of your family in the care of some other physician in this community. The Medical Arts Clinic physicians will continue to care for you until you have placed yourself under the care of that other doctor but not exceeding ten days from the date of this letter. This should give you ample time to select a physician of your choice from the many competent practitioners in the city. With your approval, the Medical Arts Clinic will make available to your physician your case histories and information regarding the diagnosis and treatment which have been received at the Medical Arts Clinic."

The Clinic and the doctors brought a motion before Judge Berning to dismiss the action (complaint). The court treated it as a motion for summary judgment under Rule 12(b)(5), North Dakota rules of Civil Procedure, and pursuant to Rule 21 thereof dismissed the action against all of the doctors named in the complaint but otherwise denied the motion to dismiss and allowed the action against the Clinic and its manager to continue.

Thereafter, "all parties conducted discovery" proceedings. Later, Judge Berning had occasion to receive personal health services from the Clinic and some of its doctors and as a result requested counsel to indicate if this may affect the lawsuit in question, whereupon Moritz suggested some impropriety may appear if the Judge remained on the case. Judge Berning agreed and recused himself, and as a result Judge Beede was assigned to the case.

The Clinic made a motion before Judge Beede for summary judgment of dismissal, which was granted. The Clinic then moved the court to declare the action (complaint) frivolous and to allow the Clinic reasonable attorney's fees. The court granted the motion and allowed attorney's fees to the Clinic in the amount of $7,611.00. Moritz appealed. It is firmly established that this Court does not hear appeals on a de novo basis, but reviews the action taken by the trial court.[1]

The appeal raised the following issues:
1. Was summary judgment appropriate?
a. Did the trial court apply the appropriate law and legal principles in determining if the letter was reasonably susceptible of two meanings, one innocent and the other libelous?
b. If the letter is ambiguous, was the proper procedure followed?
c. Was the letter published?
d. Was the order allowing attorney's fees proper?

In resolving these issues Article I § 4 of the North Dakota Constitution, the case law developed thereunder and pertinent state statutes, and other pertinent authorities must be taken into consideration.

Section 4 of Article I provides as follows:
"Every man may freely write, speak and publish his opinion on all subjects, being responsible for the abuse of that privilege. In all civil and criminal trials for libel the truth may be given in evidence, and shall be a sufficient defense when the matter is published with good

---

1. NDCC § 28–27–32 was repealed by Ch. 311 § 2, S.L. 1971, eliminating de novo appeals to the Supreme Court in cases tried to the court without a jury.

motives and for justifiable ends; and the jury shall have the same power of giving a general verdict as in other cases; and in all indictments or informations for libels the jury shall have the right to determine the law and the facts under the direction of the court as in other cases."

Our Court, in *McCue v. Equity Cooperative Publishing Co. of Fargo*, 39 N.D. 190, 167 N.W. 225 (1918), said that every man may freely write, speak and publish his opinions on all subjects but is responsible for an abuse of that privilege to any person injured by such abuse.

North Dakota Century Code Ch. 14–02, Personal Rights, classifies defamation as being either libel or slander.

Civil libel is defined in NDCC § 14–02–03, as follows:

"Libel is a false and unprivileged publication by writing, printing, picture, effigy, *or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided,* or which has a *tendency to injure him in his occupation.*" [Emphasis added.]

The majority has disregarded the underscored language.

The North Dakota Supreme Court, in *Lauder v. Jones*, 13 N.D. 525, 101 N.W. 907 (1904), held that in order to render words defamatory the defamation need not be in direct terms. Defamation may be made indirectly by insinuation, by sarcasm, or by mere questions as well as by direct assertion in positive terms and it is not less actionable because made indirectly; and it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory.

In *Lauder* the court observed:

"The decisive question upon the objection that the complaint does not state a cause of action is this: Is the language of the affidavit, standing alone, fairly susceptible of a defamatory meaning? If it is, then the complaint states a cause of action and the case was properly submitted to the jury, for it is well settled that

where the language of an alleged libel is fairly susceptible of a construction which renders it defamatory, and therefore actionable, even though it is also susceptible of a construction which would render it innocent, the complaint states a cause of action, good as against demurrer, and it is for the jury to determine whether the words were used in an innocent or defamatory sense. [Citations omitted.]

This principle of law was affirmed in Syllabus ¶ 2 in *Rickbeil v. Grafton Deaconess Hospital*, 74 N.D. 525, 23 N.W.2d 247 (1946). There is no question the complaint stated a cause of action even though the letter itself is capable of two meanings—one defamatory and the other innocent. *McCue v. Equity Coop Pub. Co. of Fargo, supra.* If innuendo is involved it is also for the jury to decide. *Ellsworth v. Martindale-Hubbell Law Dictionary*, 69 N.D. 610, 289 N.W. 101 (1940).

It is common knowledge that clinics and similar establishments generally make efforts to attract clientele within professional bounds. Consequently, a notice of termination containing statements such as those in paragraph two of the letter in question can easily trigger the imagination of the reader with uncomplimentary thoughts of the addressee and may create various impressions or suspicions why the termination notice was given. Such a statement also permits the reader by or through innuendo to conclude, or at least suspect, that the individual to whom the letter is addressed is a persona non grata.

The instant case is similar to the case of *Denny v. Mertz*, 84 Wis.2d 654, 267 N.W.2d 304 (1978), wherein the Supreme Court of Wisconsin held that a statement that an attorney was "fired" was capable of being understood in a defamatory sense by reasonable people in the community and that:

"Reasonable people could conclude that a person's being fired would tend to injure their reputation in the popular sense or to diminish the respect or esteem that people had for him. Whether the article would actually have that effect is question for the jury."

In the instant case Moritz was "fired" as a patient. The Court in *Denny* observed that "Initially, the court has the obligation of deciding whether a communication is capable of a defamatory meaning." It then referred to *Lathan v. Journal Company*, 30 Wis.2d 146, 140 N.W.2d 417 (1966), wherein it defined "defamation" as follows:

"That which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him. Prosser, page 756"

It then quoted from Restatement Torts, page 140, § 559 that:

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."

Wisconsin has a similar constitutional provision on free speech, etc., as North Dakota.

In *McCue v. Equity Cooperative Publishing Co. of Fargo*, 39 N.D. 190, 167 N.W. 225 (1918), this Court quoted with approval the following:

"That which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him. Prosser, page 756"

It then quoted from Restatement Torts, page 140, § 559 that:

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."

Wisconsin has a similar constitutional provision on free speech, etc., as North Dakota.

In *McCue v. Equity Cooperative Publishing Co. of Fargo*, 39 N.D. 190, 167 N.W. 225 (1918), this Court quoted with approval the following:

"If there is any doubt as to the meaning of a publication claimed to be libelous, so that extrinsic evidence is needed to determine its character as to its being actionable, it is a question for the jury under proper instructions from the court to find its true character and significance." Newell, Slander and Libel (2d ed.) page 290.

This view is shared by other authorities.[2]

Simple logic and reasoning dictate that whenever extrinsic evidence is needed to determine whether a statement is defamatory or innocent, the statement is ambiguous and should be decided by the jury under our Constitution, unless a jury trial has been waived, in which event the trier of facts could be the Judge.

"The language is given the meaning which the person to whom it is addressed ordinarily would give it. Its meaning is that which the recipient correctly or mistakenly, but reasonably understands it to have. This test applies both to the court in determining whether an imputation is actionable per se or susceptible of a defamatory meaning and to the jury in determining the meaning that was given to the language by the readers or listeners." 50 Am.Jur.2d § 138, page 640.

"However, if the language is ambiguous and susceptible of two meanings, one defamatory and the other not, it is for the jury to decide whether or not it was used in a defamatory sense." 53 C.J.S. *Libel and Slander* § 223, page 336.

" . . . It is for the court to determine whether or not the language on its face is capable of a double meaning or the meaning contended by the plaintiff and ascribed to it by the innuendo; and if the language is capable of such meaning it is

**2.** This statement is also found in Newell, The Law of Slander and Libel (4th ed.).

In addition, Robert D. Sack, in his book entitled "Libel, Slander, and Related Problems," published by Practicing Law Institute (24 Oct

1980), in substance states the same concept in section II.4.12. A similar concept is stated in Hanson's book entitled "Libel and Related Torts" ¶ 242 (1969).

then for the jury to say whether the language which was used and understood actually had the meaning so ascribed to it." 53 C.J.S. *Libel and Slander* § 223, page 339.

The Clinic contends that the letter in question was drafted and modeled after the form found in 10 Am.Jur., Physicians and Surgeons, 10:1515, which provides as follows:

"This is to inform and advise you that I am withdrawing from your case as your doctor and relieving myself from any further professional responsibility for services or treatment to you.

"However, to allow you a reasonable opportunity to obtain another physician, I shall be available for services and advice until the ____ day of ____, 19__. By said date you should have no difficulty in securing other professional service in this community.

"I shall also be glad to co-operate with any reputable physician of your choice and make available to him at his request all records and data in my files concerning your case.

"I regret having to give this notice of withdrawal but I feel it is advisable in fairness to us both since ____ (give reasons for withdrawal, such as failure to follow advice and prescribed treatments, failure to keep appointments, etc., as the case may be)."

However, an examination discloses that the middle paragraph of the letter is completely different from any suggestions made in the form 10:1515. Also, the letter gives no reason for the termination notice as suggested by the form.

If the letter had given the reason for the termination the innuendoes would not have been left and the reader would not be in a position to speculate.

The first Judge (Berning), after considering the pleadings and extrinsic evidence consisting of an affidavit by Moritz (primarily restating parts of the complaint and making reference to her action against Dr. Glitner) and an affidavit by the attorney for the defendants (setting forth the time devoted to the case), issued his memorandum opinion wherein he judicially evaluated the letter and concluded that it "appears to be reasonably susceptible of two constructions, one innocent and the other defamatory. In cases such as this, the trier of facts should determine which construction is the proper one." The second Judge (Beede) after considering the pleadings and additional extrinsic evidence consisting of depositions, exhibits, additional affidavits and "other materials in the record" concluded that the claim for relief was frivolous [that the letter was innocent] and granted the motion for summary judgment. The opposite views reached by the two judges, one with very little and the other with considerable extrinsic evidence, is a strong indication that the letter is ambiguous.

If such extrinsic material was necessary to determine whether the letter was defamatory or not then the matter was not appropriate for disposition by summary judgment but should have been decided by a jury unless a trial by jury was waived, in which event the judge would be the trier of facts.[3]

Furthermore, a motion for summary judgment should be granted only if, after considering evidence in the light most favorable to the party against whom judgment is demanded there remains no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. *St. Paul Fire & Marine Insurance Co. v. Amerada Hess Corporation*, 275 N.W.2d 304 (N.D.1979); *Pioneer State Bank v. Johnsrud*, 284 N.W.2d 292 (N.D.1979). It obviously follows that if any inferences may

---

**3.** Judge Beede did not issue a memorandum opinion or otherwise explain the conclusion to grant the motion for a summary judgment of dismissal. His actions in denying a motion to prevent the taking of depositions of the doctors associated with the clinic and his statement in the order granting the motion for summary judgment of dismissal that "the court has considered the pleading, depositions, affidavits, exhibits, briefs, all other materials in the record," are indicative that the letter was ambiguous and that extrinsic evidence was necessary to determine its true meaning.

be drawn they also must be considered in the light most favorable to the party against whom judgment is sought. An affidavit of a hostile witness should not be treated as conclusive in a summary judgment proceeding. *Sagmiller, supra.* Also, if findings of fact are required to be made, the subject matter is not appropriate for summary judgment. *Albers v. Nodak Racing Club*, 256 N.W.2d 355 (N.D.1977). These principles apply to actions in libel to determine the true meaning of ambiguous statements.

Depositions, affidavits, and similar items of extrinsic evidence were presented by both sides and used to either establish that the letter was or was not defamatory, as the case may be. Therefore, on the principles of law stated earlier herein this becomes a matter for the jury to decide and is not proper for disposition by summary judgment.

Based on the foregoing principles of law adopted and announced by this Court on previous occasions, and applicable principles of law as to the question whether or not the letter contained defamatory libelous material, I conclude that the letter without extrinsic evidence can be construed either to be defamatory or innocent and is a matter that should be resolved by the trier of fact, the jury, or judge (bench trial) if the jury was waived, as the case may be, but not by summary judgment.

As to the issue of publication, the letter in question was dictated by the manager of the Clinic, and was transcribed by the stenographer at the direction of the manager. As one of her duties, after transcribing the letter and getting it signed, she mailed it by first class mail to plaintiffs as directed by the manager. The stenographer did not know then and at the time of her deposition what the lawsuit was about but knew it was disposed of. Neither did she know if, or how many, others saw the letter.[4]

The precise question whether or not this constituted publication was before this Court in *Rickbeil v. Grafton Deaconess Hospital*, 74 N.D. 525, 23 N.W.2d 247 (1946). The Court observed that the personal rights of the individual to be free from defamation of character are paramount to any exigencies of business and the stenographer who types, and the office boy who copies, are individuals with personalities, even if mere employees, whether the relationship of master and servant exists, or whether all parties concerned are employees of an employer common to each. After considering some of the case law of other states, our Court said:

> "We cannot approve the theory regarding a stenographer stated in the Tennessee case, supra, and other cases. We hold that the dictating of this letter by the manager to the stenographer and her transcription of her notes into the written instrument constitutes publication within the purview of the law of libel: whether the relationship be that of master and servant or of 'employees of a corporation.'" 23 N.W.2d at 257.

This statement is in harmony with Restatement of Torts § 577.

The annotation in A.L.R.3d 1207 sets out the various jurisdictions which hold that dictation to a secretary-typist, or a stenographer, constitutes publication and those that do not. The following jurisdictions hold that dictation is publication: United States Federal courts, Alabama, Louisiana, Maryland, New Jersey, New York, North Dakota, Pennsylvania, and Virginia.

Those jurisdictions that do not follow the view that dictation constitutes publication are: Mississippi, South Carolina, and Tennessee.

The annotation also reviews those jurisdictions which had occasion to determine whether or not a corporation comes under the same rule. Those jurisdictions holding that a dictation to a secretary-typist does

---

**4.** The termination notice most likely was prompted as a result of an operation on Mrs. Moritz by Dr. Glitner, an associate of the Clinic, to prevent her from becoming pregnant. She became pregnant and brought an action against the doctor, which resulted in a compromise settlement.

not constitute publication are: Alabama, Georgia, North Carolina and Virginia.

Those jurisdictions which hold that a corporation comes under the same rule and that dictation to a stenographer-typist, etc., constitutes publication are: North Dakota, New York, Maryland, District of Columbia (federal cases). The state of New York is split on this precise question but the more recent cases and the federal courts within the New York area have rejected the concept that dictation to a secretary or typist constituted an exception and is not the publication, and the view was adopted that dictation to a secretary or stenographer constituted publication.

A review of the cases cited in the annotation clearly discloses that the majority of jurisdictions follow the view that dictation to a secretary or typist constitutes publication, whether it be a corporation or an individual.

I am not aware of any valid legal reason, and none has been presented to me, why this Court should overrule its ruling and decision in *Rickbeil, supra.* This is particularly so where it is evident that the ruling in *Rickbeil, supra,* is in accord with the majority of jurisdictions.

The only issue remaining is whether or not, on the record before us, a statutory privilege is available to the Clinic and its manager. After a careful examination of NDCC subsections (1), (2), (3), and (4) of § 14-02-05, we conclude that the communication in question (the letter) was not a privileged communication. We are not aware of any other statute which specifies as to what shall constitute a privilege and none has been called to our attention.

The first trial Judge (Berning) in the first motion by the Clinic noted that a similarity existed between the instant case and the case of *Emo v. Milbank Mutual Insurance Co.,* 183 N.W.2d 508 (N.D.1971), in which an insurance policy was canceled and the question was whether or not the privilege existed under the provisions of NDCC §§ 26-02-33 through 26-02-35. The Court found that the given reason for canceling the policy was not a matter that was protected under the statute and, therefore, the insurance company could not rely upon a statutory privilege. As stated earlier, I am not aware of any statutory privilege available to the defendants.

Our major role and sole concern is to judiciously and properly apply the appropriate law, and in doing so our individual or collective attitude should only play a secondary role, if any. Nevertheless, I can empathize with the Clinic.

I am not implying that the Clinic or any association of doctors may not terminate its services to any person except under the possibility of penalty. Nor am I implying that the letter can only be viewed as being libelous. The method used and the circumstances under which a notice of termination is accomplished or given makes a difference whether or not it is defamatory or innocent or if it is a question to be decided by the jury, or judge if a jury has been waived.

If I were to sit as a juror, I could probably arrive at the conclusion reached by the majority, but that is a privilege or prerogative I may not assume here.

I would conclude that the trial court erred in issuing the summary judgment of dismissal and the order allowing attorney's fees in the sum of $7,611.00, and accordingly I would reverse the judgment and vacate the order allowing attorney's fees and remand the case for trial in accordance with this opinion.